# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 16-20032-01-06-JAR |
| | ) |
| LORENZO BLACK, | ) |
| KARL CARTER, | ) |
| ANTHON AIONO | ) |
| ALICIA TACKETT, | ) |
| CATHERINE ROWLETTE, | ) |
| and | ) |
| DAVID BISHOP, | ) |
| | ) |
| Defendants. | ) |

## GOVERNMENT'S RESPONSE TO THE MOTION TO IMPOUND ADDITIONAL GOVERNMENT EVIDENCE

The United States opposes the Motion for Court to Impound Additional Government Evidence filed on August 15, 2016 by the Federal Public Defender Office (FPD). (Doc. 105.) In the motion, the FPD argues the recorded inmate phone calls between an inmate and his attorney are privileged, thus any dissemination or review of those calls violates the Sixth Amendment. Because the inmates and attorneys knew their conversations were being recorded, any privilege has been waived. Accordingly, the FPD's motion should be denied.

## I. Procedural Background

As part of an investigation into widespread drug and contraband trafficking inside the Corrections Corporation of America (CCA) facility in Leavenworth, Kansas, agents obtained recorded telephone calls made by approximately forty inmates housed at CCA. Counsel for the government was aware of CCA's procedure that privatizes attorney-client calls prior to requesting the recorded inmate calls in this case. Counsel for the government did not intend to receive attorney-client calls as part of this investigation and prosecution. The government does not intend to review or use any attorney-client calls as part of this investigation or prosecution. The United States Attorney's Office produced the recorded CCA calls to defense counsel as part of discovery in this case.

On August 16, 2016, the parties and interested parties convened for a hearing regarding the appointment of a Special Master to review video recordings containing potential attorney-client communications. At the hearing, the FPD presented evidence and argument regarding the Motion to Impound recorded inmate phone calls. The FPD provided a chart showing that some of the recorded inmate calls obtained from CCA appear to contained communications between the inmate and his respective attorney. Because the FPD filed the present motion the day prior to the hearing, the government was not in a position to respond to the motion at the hearing.

## II. Background

According to the CCA Inmate Handbook, outgoing telephone calls are made collect or by using a phone card.  (*See* Attach. A, at 10.)  Inmates can purchase telephone cards from the commissary in the facility, which may be used to place outgoing calls.  Calls are made from a bank of phones inside the inmate pods.  The Inmate Handbook notifies inmates that telephones are subject to monitoring.  The Handbook also explains,

> Your attorney may request of our facility that calls to their office not be recorded to ensure Attorney/Client privilege.  They may request this by way of sending CCA/LDC a fax on their office letterhead.  This request must include contact information and signature.  They may fax it to (913)727-2231.  **IT IS YOUR RESPONSIBILITY TO ENSURE THAT YOUR ATTORNEY IS AWARE OF THIS PROCEDURE; THEIR TELEPHONE CALLS ARE SUBJECT TO BEING RECORDED IF THEY DO NOT REQUEST THEY BE RESTRICTED.**

(*Id.*) (emphasis in original.)  When an inmate places an outgoing call from the facility, each call begins with a recorded preamble that notifies both parties, "this call is subject to recording and monitoring."

As part of this investigation, law enforcement officers reviewing recorded CCA calls have minimized all potential attorney-client calls they encountered.  For example, where an inmate places a call to his attorney's office, the agents immediately stop listening when the recipient identifies the business as a law firm.  In January 2016, an agent inadvertently listened to between ten and fifteen seconds

of a recorded call between an inmate and his attorney where the attorney answered the call on his cellular phone and did not identify himself as an attorney. Counsel for the government immediately notified the United States Attorney's Office professional responsibility point of contact and then notified that inmate's attorney that the calls from the inmate to the attorney's cellular phone were being recorded. Counsel for the government also explained to the inmate's attorney that the government did not intend to review the calls to the attorney any further, and the government did not intend to use any portion of the calls to the attorney as part of the investigation or litigation involving the inmate. The defense attorney explained that he only used the recorded line for scheduling purposes.

### III. Argument

The attorney-client privilege is the oldest of the privileges for confidential communications known to the common law." *Upjohn Co. v. United States*, 449 U.S. 383, 389, 101 S.Ct. 677, 66 L. Ed. 2d 584 (1981). The purpose behind the attorney-client privilege is to preserve *confidential* communications between an attorney and client. *In re Grand Jury Subpoenas* (*United States v. Anderson*), 906 F.2d 1485, 1492 (10th Cir. 1990) (emphasis added).

"A party claiming the attorney-client privilege must prove its applicability, which is narrowly construed." *In re Foster*, 188 F.3d 1259, 1264 (10th Cir. 1999). The party asserting the privilege must identify with specificity the items believed

to be privileged, not by making a blanket claim. *Id.* The privilege "must be strictly constructed and accepted 'only to the very limited extent that permitting a refusal to testify or excluding relevant evidence has a public good transcending the normally predominant principle of utilizing all rational means for ascertaining truth.'" *Trammel v. United States*, 445 U.S. 40, 50, 100 S. Ct. 906 (quoting *Elkins v. United States*, 364 U.S. 206, 234, 80 S.Ct. 1437, 4 L.Ed.2d 1669 (1960) (Frankfurter, J., dissenting)).

Under the common law, "a critical component of the privilege 'is whether the communication between the client and the attorney is made in confidence of the relationship and under circumstances from which it may reasonably be assumed that the communication will remain in confidence.'" *In re Qwest Communications International, Inc.*, 450 F.3d 1179, 1185 (10th Cir. 2006) (quoting *United States v. Lopez*, 777 F.2d 543, 552 (10th Cir.1985)). Because confidentiality is key to the privilege, the attorney-client privilege is waived if the client discloses the content of the communication to a third party. *Id.* "Any voluntary disclosure by the client is inconsistent with the attorney-client relationship and waives the privilege." *United States v. Bernard*, 877 F.2d 1463, 1465 (10th Cir. 1989).

Courts have overwhelmingly held that notice to an inmate informing him that jailhouse calls are subject to recording and monitoring destroys any reasonable

expectation of privacy.[1]  For example, in *United States v. Hatcher,* the Eighth Circuit held,

> [t]he presence of the prison recording device destroyed the attorney-client privilege.  Because the inmates and their lawyers were aware that their conversations were being recorded, they could not reasonably expect that their conversations would remain private.  The presence of the recording device was the functional equivalent of the presence of a third party.  These conversations were not privileged.

323 F.3d 666, 674 (8th Cir. 2003).  Even if the inmate has no other alternative, use of the phones to call his attorney is still implied waiver of the attorney-client privilege.  *United States v. Eye*, No. 05-00344-01-CRW-ODS, 2008 WL 1701089,

---

[1] *United States v. Hatcher*, 323 F.3d 666, 674 (8th Cir. 2003); *United States v. Lentz*, 419 F. Supp. 2d 820, 828–29 (E.D. Va. 2005) (holding that prisoners and their attorneys had no reasonable expectation of privacy where they knew their conversations were being recorded); *United States v. Madoch*, 149 F.3d 596, 602 (7th Cir. 1998) (holding that the marital communications privilege did not apply where the wife knew that her husband was in jail in light of the "well-known need for correctional institutions to monitor inmate conversations"); *United States v. Van Poyck*, 77 F.3d 285, 290–91 (9th Cir. 1996) (finding any expectation of privacy in outbound calls from prison is not objectively reasonable); *United States v. Sababu*, 891 F.2d 1308, 1329 (7th Cir. 1989) (stating that non-prisoner caller had no reasonable expectation of privacy when speaking on prison phone in part because the Code of Federal Regulations placed her on constructive notice that prison officials could legally monitor calls); *United States v. Harrelson*, 754 F.2d 1153, 1169–70 (5th Cir. 1985) (stating that interspousal communications privilege during prison visit were not privileged where eavesdropping could reasonably be expected to occur); *United States v. Lentz*, 419 F. Supp. 2d 820, 836 (E.D. Va. 2005) (holding attorney-client calls not privileged where each outgoing call from the prison plays a pre-recorded message stating the call is subject to recording and monitoring); *Watson v. Albin*, No. 06-07767-RMW, 2008 WL 2079967, at *5 (N.D. Cal. May 12, 2008) (unpublished) (finding attorney-client privilege waived where inmate placed calls from jail on a monitored phone line); *United States v. Eye*, No. 05-00344-CRW, 20080WL 1701089, at *13 (W.D. Mo. Apr. 9, 2008) (finding defendant waived his attorney-client privilege by calling his attorney when he well knew that the calls could be monitored and recorded by CCA).  *But see United States v. Walker*, 2011 WL 2728460, at *2 (M.D. Ala. July 13, 2011) (finding that recorded attorney-client conversations were not privileged where the preamble to each recorded call stated, "[t]his call is also subject to being recorded or monitored, except for privileged communication between an attorney and client").

6

at \*12 (W.D. Mo. Apr. 9, 2008) (citing *United States v. Horr*, 963 F .2d 112 (8th Cir. 1992)).

In *Eye*, the defendant moved to dismiss the indictment on the grounds that calls from the defendant to his attorney were recorded by CCA and distributed to the FBI, the United States Attorney's Office, and a co-defendant's attorney. The defendant was held at the CCA facility in Leavenworth, Kansas. Noting that the defendant was informed upon arriving at CCA that all of his calls were subject to monitoring and recording, the Court found "[w]hen prison inmates have been informed that telephone calls are monitored, consent to monitoring is implied by the inmate's use of the prison's telephones." *Id.* at \*12 (citing *United States v. Van Poyck*, 77 F.3d 285, 292 (9th Cir. 1996) (any expectation of privacy in outbound calls from prison is not objectively reasonable)). Because the inmate knew that the calls could be recorded and monitored by CCA, *Eye* held the defendant had waived his attorney-client privilege by calling his attorney. *Id.* at \*13.

Here, every inmate call initiated from the bank of phones within the pods begins with a recorded preamble notifying the parties that the call is subject to recording and monitoring. Each inmate is notified in the Inmate Handbook that the phone calls are monitored. By continuing to contact their attorneys on recorded lines, these inmates had no reasonable expectation of privacy and thus waived any privilege to the content of those calls.

Accordingly, the Federal Public Defender Office's Motion to Impound Additional Evidence (Doc. 105) should be denied. Further, because the recorded inmate calls are not privileged, the calls should not be subject to review by a Special Master.

    Respectfully submitted,

    THOMAS E. BEALL
    Acting United States Attorney
    District of Kansas

    s/ D. Christopher Oakley
    D. Christopher Oakley #19248
    Assistant United States Attorney
    District of Kansas
    500 State Avenue, Suite 360
    Kansas City, Kansas  66101
    (913) 551-6730 (telephone)
    (913) 551-6541 (facsimile)
    E-mail: Chris.Oakley@usdoj.gov
    ELECTRONICALLY FILED
    Attorney for Plaintiff

    s/ Erin S. Tomasic
    Erin S. Tomasic, D. Kan.# 78430
    Special Assistant United States Attorney
    District of Kansas
    500 State Avenue, Suite 360
    Kansas City, Kansas  66101
    (913) 551-6730 (telephone)
    (913) 551-6541 (facsimile)
    E-mail: Erin.Tomasic@usdoj.gov
    ELECTRONICALLY FILED
    Attorney for Plaintiff

## **CERTIFICATE OF SERVICE**

I hereby certify that on August 23, 2016, I electronically filed the foregoing with the clerk of the court by using the CM/ECF system, which will send a notice of electronic filing to all attorneys of record.

s/Erin S. Tomasic  
ERIN S. TOMASIC  
Special Assistant United States Attorney