**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

**UNITED STATES OF AMERICA,**
   *Plaintiff,*
   **v.**                                   Case No. **16-20032-JAR**

**LORENZO BLACK,** *et al.***,**
   *Defendants.*

---

**FEDERAL PUBLIC DEFENDER'S MOTION FOR PRODUCTION OF
GRAND JURY MATERIALS TO SPECIAL MASTER**

---

The Federal Public Defender respectfully asks the Court to order the government to produce grand jury materials and information to the Special Master. It was the issuance of a grand jury subpoena by the U.S. Attorney's Office for the District of Kansas (USAO), and attorney-client communication returned by that subpoena, that gave rise to the original appointment of the Special Master. Production of grand jury materials to the Special Master falls within this Court's Order appointing the Special Master.[1] Substantial questions remain regarding whether the USAO misused grand jury subpoena power and complied with the law requiring secrecy of matters occurring before a grand jury.[2] These questions deserve further consideration by the Special Master and the Court.

---

[1] D.E. 146 at 8.

[2] Tr. 8/9/16 at 99-100:

1

## **Request for Relief**

Specifically, the Court should order the government to provide to the Special Master, under seal, grand jury records from this case, including but not limited to, all transcripts, subpoenas, target letters, jury instructions, exhibits, and other relevant records.[3] These materials should relate to:

1. any and all grand jury proceedings and investigations in this case;

2. any and all grand jury proceedings and investigations related to a superseding indictment in this case;

---

| | |
|---|---|
| The Court: | Have you examined at all the intersection between legal ethics, professional responsibility, and the obligations under Rule 6(e) of the Federal Rules of Criminal Procedure? |
| Prof. Joy: | I – not in terms of Rule 6(e). I have not looked into that. |
| The Court: | All right. So you've spoken about the obligations of a prosecutor who comes into possession of attorney-client privileged information. If they come into possession of that information by virtue of a grand jury subpoena, such that it's Rule 6(e) information, and then use that information in an unrelated case, sharing attorney-client privileged information to an attorney or perhaps at least giving that attorney access to their own privileged information, by maybe – maybe even access to other attorney-client communications, but in an unrelated case to the grand jury investigation, do you see a potential Rule 6(e) violation as well? |
| Prof. Joy: | I – as I mentioned, Your Honor, I-I have note examined that closely. But based on the scenario that – that you've set forth, I would say yes …But I'm saying that based on my-my now somewhat dated recollection. So I-I say that with that qualification. |

[3] The list of materials requested to be produced to the Special Master does not include any information related to how the grand jury was pooled or drawn.

2

3. any and all grand jury proceedings related to the investigation of approximately 150 other targeted persons under USAO scrutiny;[4] and

4. any and all other grand jury proceedings and investigations related to the investigation of contraband smuggling within CCA Leavenworth (now CoreCivic).

After analyzing the grand jury records, the Special Master shall report to the Court his findings regarding whether and how any attorney-client privileged materials were presented or returned to the grand jury; how these materials and information were used as part of any grand jury investigation; and how disclosure should be made to the defense so that the defense may be in a position to seek relief.

## Relevant Facts and Procedural History

### *Grand Jury Subpoena for Video Recordings*

In "early March" of 2016, the USAO, in conjunction with law enforcement investigators, planned an undercover "controlled buy" operation.[5] The government intended to send an undercover agent into the attorney-client meeting room at CCA Leavenworth posing as a paralegal to facilitate a sale of controlled substances with an inmate, so that they could

---

[4] Tr. 7/21/16 at 15-16, 23 (SAUSA Tomasic: "At this point, based on wire transfer information, the government believes that 95 inmates or more were involved in this conspiracy and 60 individuals or more on the outside working with them. And so it is a fairly widespread conspiracy.").

[5] Tr. 9/7/16 at 18-20.

3

video record the transaction. Thus, at a minimum, in March 2016 the prosecutors in this case were aware that the attorney-client visitation rooms at CCA Leavenworth had video recording capabilities. The USAO sought approval for the "controlled buy" operation from within the Department of Justice. Approval was denied because the operation was deemed to be too dangerous.[6]

On April 12, 2016, the USAO issued a "Subpoena to Testify Before a Grand Jury" to the Custodian of Records at CCA Leavenworth to appear and testify before a grand jury on May 4, 2016.[7] The subpoena was requested by SAUSA Erin Tomasic. It provided that in lieu of appearance and testimony, the CCA Custodian of Records could produce to the U.S. Secret Service "all video footage and still images currently retained by the Correction Corporation of America (CCA) depicting any internal or external surveillance or still image taken between July 2014 and April 12, 2016 at the CCA facility in Leavenworth, Kansas." Thus, according to SAUSA Erin Tomasic, **"[t]he**

---

[6] *Id.* at 20 (SAUSA Tomasic: "The controlled buy was abandoned before it ever got off the ground because we deemed it was too dangerous because there couldn't be agents inside the facility to be near him if, in fact, his life was put in danger. … We sought approval at a certain point from DOJ for the controlled buy and then immediately DOJ said no, it's too dangerous."). Additionally, the communication between the USAO and agents setting up the controlled buy, and the communication between the USAO and DOJ, may also inform the Special Master of the USAO's knowledge and access to video recordings of attorney-client meetings.

[7] Def. Ex. 438.

**government had a good-faith basis to believe that the CCA video-recordings contained attorney-client meetings at the time the issue – the subpoena was issued."**[8]

The grand jury indicted the defendants in the present case on May 4, 2016.[9]

At a status conference on July 21, 2016, the USAO stated it was preparing to disseminate in discovery all of the video recordings obtained by the grand jury subpoena.[10]

The video recordings that the USAO obtained by grand jury subpoena were then disclosed to defense attorney Jacquelyn Rokusek on August 5, 2016.[11] The context and purpose of the USAO providing Ms. Rokusek access to the video recordings was an attempt by the USAO, and Criminal Coordinator AUSA Kim Flannigan and SAUSA Erin Tomasic in particular, to use the videos as evidence to convince Ms. Rokusek to withdraw due to a conflict from her representation of a client in a criminal case, wholly

---

[8] Tr. 9/7/16 at 13 (emphasis added).

[9] D.E. 52.

[10] Tr. 7/21/16 at 5-6.

[11] Tr. 8/9/16 at 37-38.

5

unrelated to the *Black* case and apparently unrelated to the *Black* grand jury investigation.[12]

*Grand Jury Subpoena for Phone Calls*

The USAO also obtained and then disseminated in discovery audio recordings of phone calls between inmates at CCA Leavenworth and their attorneys[13] including numerous attorney-client phone calls that had no connection to the *Black* case.[14] The USAO later informed the Court that the audio recordings were also obtained by the issuance of a grand jury subpoena.[15] A redacted version of this subpoena was admitted as an exhibit

---

[12] *Id.* at 41.

[13] Tr. 8/16/16 at 18-22.

[14] Def. Ex. 449.

[15] Tr. 9/7/16 at 26-27:

> SAUSA Tomasic: There was a subpoena issued in April that the government also has and can admit. But it is a grand jury subpoena, so we would request to admit it under seal.
>
> The Court: This is for the audio, not the video.
>
> SAUSA Tomasic: Yes, Your Honor.
>
> The Court: So you used a grand jury subpoena for the audio-recordings, just like you did for the video-recordings?
>
> SAUSA Tomasic: Initially…
>
> The Court: … I think the subpoena should be put into evidence, just like the other was for the video…"

at 28:

under seal.[16]  The grand jury subpoena required production of all CCA Leavenworth phone calls from listed inmates "from July 1, 2014 until notified recorded calls are no longer needed."[17]  The USAO also obtained audio recordings of inmate phone calls by a request made directly from the U.S. Marshals Service to CCA Leavenworth that was for a longer period of time of calls than covered under the grand jury subpoena.[18]

*Special Master Appointment to Investigate Grand Jury Matters*

In appointing the Special Master,[19] the Court contemplated that it may later expand the scope of the appointment to, *inter alia*: "[d]etermine whether the Government intentionally sought production, formally or informally, of any protected communication from any pretrial holding facility for use in an

---

> The Court: And so is the subpoena directed to CCA or is it directed to Securus?

SAUSA Tomasic: To CCA.

[16] Govt. Ex. 21.

[17] Govt. Ex. 21 Attachment.

[18] Tr. 9/7/16 at 27 (SAUSA Tomasic: "At a certain point in the investigation, Marshal Cahill and other agents involved recognized that the conspiracy spanned several years. And so he contacted CCA and – an employee of CCA and requested those phone calls pursuant to the marshal's contract, without a subpoena, and got – a number of those calls were the exact same calls that were initially produced, but he got a larger time span.")

[19] D.E. 146.

investigation, *grand jury proceeding*, or prosecution; and by what means;" and "how the Government has used or attempted to use protected material in any investigation, *grand jury proceeding*, or litigation, regardless of whether the use or attempted use was disclosed to the Court or to the parties."[20] The FPD has since asked the Court to expand the investigation into the practices and policies of the USAO in obtaining and using recorded attorney-client communication;[21] the government opposes,[22] and that issue is pending before this Court.

On January 31, 2017, the Special Master filed a "First Report Regarding Video Recordings."[23] The Special Master concluded that DVR drive No. 6 contained video recordings of privileged or confidential information.[24] However, the Special Master's analysis did not extend to whether anyone with the government viewed these recordings.[25] The government objected to the Special Master's conclusion that videos obtained by grand jury subpoena

---

[20] *Id.* at 8 (emphasis added).

[21] D.E. 188.

[22] D.E. 192.

[23] D.E. 193.

[24] *Id.* at 4.

[25] *Id.* at 6.

8

contained privileged or confidential information.[26] In its objection, the government stated that "these recordings are not materials which the United States initially sought, seeks to use, or requests to have returned."[27]

## Legal Authority and Basis for Relief

Rule 6 of the Federal Rules of Criminal Procedure details the requirements of grand jury proceedings. It includes requirements of who may be present,[28] obligations to record the proceedings,[29] and a secrecy rule that prohibits disclosure of matters occurring before the grand jury.[30]

The Supreme Court has consistently "recognized that the proper functioning of our grand jury system depends upon the secrecy of grand jury proceedings."[31] The law permits that only certain persons may be present while a grand jury is in session: attorneys for the government, the witness being questioned, interpreters, and a court reporter.[32] The general rule is

---

[26] D.E. 197.

[27] *Id.* at para. 6.

[28] Fed. R. Crim. P. 6(d).

[29] Fed. R. Crim. P. 6(e)(1).

[30] Fed. R. Crim. P. 6(e)(2).

[31] *Douglas Oil Co. of California v. Petrol Stops Nw.*, 441 U.S. 211, 218 (1979) (citing *United States v. Procter & Gamble Co.,* 356 U.S. 677 (1958)).

[32] Fed. R. Crim. P. 6(d)(1).

9

that matters occurring before the grand jury may not be disclosed,[33] unless certain carefully circumscribed exceptions apply.[34] The scope of the grand jury secrecy rule under Rule 6(e) has been broadly interpreted "to encompass 'what took place in the grand jury room.'"[35]

One exception to the secrecy rule is that the Court may order and authorize disclosure of grand jury matters in connection with a judicial proceeding.[36] At its discretion, the Court may also limit the time and manner of disclosure and direct any other conditions be placed on the disclosure, as it deems appropriate.[37] Additionally, the Court may use its supervisory power

---

[33] Fed. R. Crim. P. 6(e)(2)(B).

[34] For example, the exceptions include that a grand jury matter (other than the deliberations or vote) may be disclosed: to an attorney for the government for use in performance of the attorney's duty (Rule 6(e)(3)(A)(i)); government personnel assigning the government attorney in the duty to enforce federal criminal law (Rule 6(e)(3)(A)(ii); a government attorney may disclose any grand jury matter to another federal grand jury (Rule 6(e)(3)(C)); a government attorney may disclosure any grand jury matter involving foreign intelligence or threats of attack to the appropriate authorities (Rule 6(e)(3)(D)).

[35] *In re Special Grand Jury* 89-2, 450 F.3d 1159, 1176 (10th Cir. 2006)(quoting *Anaya v. United States*, 815 F.2d 1373, 1379 (10th Cir. 1987)); *see also Fund for Constitutional Gov't v. Nat'l Archives & Records Serv.*, 656 F.2d 856, 869 (D.C. Cir. 1981) ("the scope of the secrecy is necessarily broad.").

[36] Fed. R. Crim. P. 6(e)(3)(E)(i).

[37] Fed. R. Crim. P. 6(e)(E).

"as a means of enforcing or vindicating legally compelled standards of prosecutorial conduct before the grand jury."[38]

The Court may properly order release of grand jury materials after a party demonstrates the necessity "with particularity."[39] A party seeking disclosure must show:

> (1) the materials are needed to avoid a possible injustice in another judicial proceeding, (2) the need for disclosure is greater than the need for continued secrecy, and (3) the request is structured to cover only material so needed. Relevance alone is not sufficient; secrecy will not be broken absent a compelling necessity for the materials. Further, the request must amount to more than a request for authorization to engage in a fishing expedition.[40]

The grand jury's supervisory court is "in the best position to determine the continuing need for grand jury secrecy."[41]

In our context, the Court should give substantial weight to fact that the Special Master works for the Court,[42] by appointment, and is not a party to

---

[38] *United States v. Williams*, 504 U.S. 36, 46-47 (1992).

[39] *In re Special Grand Jury 89-2*, 143 F.3d at 569 (quoting *Procter & Gamble*, 356 U.S. at 682).

[40] *Id.* at 569-70.

[41] *Id.* at 570 (quoting *Douglas Oil,* 441 U.S. at 226).

[42] *See, e.g., In re Peterson*, 253 U.S. 300, 312-13 (1920) ("Courts have (at least in the absence of legislation to the contrary) inherent power to provide themselves with appropriate instruments required for the performance of their duties. This power includes authority to appoint persons unconnected with the court to aid judges in

11

the litigation. Thus, the need for grand jury secrecy is maintained, to some degree, because the disclosure covers only the material needed and, more importantly, with the condition that it be presently be provided to the Special Master alone, not the defendants or interested parties.

The grand jury materials must be disclosed to avoid an injustice in this case because the Special Master must have full access to the grand jury materials to fulfill his court-ordered obligations. The CCA attorney-client video and audio recordings are at the heart of this litigation. The use of the grand jury power was extensive and without judicial oversight: the grand jury subpoena did not require court authorization, only signature of the prosecutor with the court clerk's seal; the grand jury subpoena was not limited to the defendants ultimately indicted or, for that matter, to those targeted for investigation of the alleged conspiracy; and, as discussed, the USAO was aware that the video recordings included attorney-client visitation rooms when it issued the grand jury subpoena.

The grand jury subpoena issued to CCA Leavenworth requiring production of inmate phone calls was admitted in a redacted form under seal,

---

the performance of specific judicial duties, as they may arise in the progress of a cause. From the commencement of our government it has been exercised by the federal courts, when sitting in equity, by appointing, either with or without the consent of the parties, **special masters**, auditors, examiners, and commissioners.") (emphasis added).

12

but as it was described by SAUSA Tomasic, appears to have been similarly far-reaching in the number of inmate calls it swept in as part of this investigation. The Special Master's Report regarding telephone call audio recordings corroborates the breadth of this grand jury subpoena.[43]

The Special Master is in a unique position to assist the Court in conducting an efficient and timely review of grand jury matters and assessing the use of the grand jury function in this case. The Special Master can also recommend whether dissemination of grand jury matters to the defense is required so that the defense may seek additional relief.[44]

The knowledge, intent, and state of mind of the prosecutors who handled the grand jury proceedings in this case is key to many issues before this Court.[45] The grand jury materials may also shed light on the contradictory positions taken by the government.  Compare:

---

[43] D.E. 187.

[44] *Shillinger v. Haworth*, 70 F.3d 1132, 1142 (10th Cir. 1995) (quoting *United States v. Morrison*, 449 U.S. 361, 364 (1980) ("Cases involving Sixth Amendment deprivations are subject to the general rule that remedies should be tailored to the injury suffered from the constitutional violation and should not unnecessarily infringe on competing interests.").

[45] Tr. of 9/7/16 hearing, at 136-37 (SAUSA Tomasic: "I would like to proffer a little bit of information just to supplement the Court's questions. … I'm aware of the concerns with what I knew and also my intent. And what I knew and my intent are completely different.").

- In its recent filing, the government stated that the video "recordings are not materials which the United States initially sought, seeks to use, or requests to have returned."[46]

- This is incompatible with government statements to the Court by SAUSA Tomasic regarding the government's "good faith" belief that the recordings would include attorney-client meetings in the visitation rooms. It was in March 2016, before the issuance of the grand jury subpoena for the video recordings, that the USAO used its knowledge of recording capabilities when it planned the "controlled buy" undercover operation within CCA Leavenworth visitation rooms.

*Potential Grand Jury Violations*

The government has previously argued "there is no need for the Special Master to examine whether any violation of Rule 6 occurred."[47] However, the government limited its analysis of potential Rule 6 violations only to whether discovery productions under Rule 16 violated Rule 6(e).[48] Assuming, *arguendo*, the government is correct (which the defense does not concede), it still does not resolve many questions regarding whether grand jury secrecy was maintained, grand jury subpoena power abused, or other legal and

---

[46] D.E. 197 at para. 6.

[47] D.E. 133 at 36.

[48] *Id*. ("Thus, under *Anaya*, the production of Rule 16 discovery, or discovery related to sentencing issues, which might include documents, records, and other evidence obtained via grand jury subpoena, would not violate Rule 6(e), as long as the discovery reveals nothing about what actually transpired before the grand jury or what is likely to transpire before the grand jury.").

14

ethical violations may give rise to relief.[49] The defense agrees there are many instances in which grand jury matters must be produced in discovery to charged defendants.[50] However, the issues in this case include and go beyond discovery matters.

For example, in August 2016 the USAO presented evidence obtained by a grand jury subpoena to Ms. Rokusek in an effort to force her to withdraw from other criminal cases.[51] In other words, the USAO used information obtained by its grand jury power in this case to leverage its position in another case. Ms. Rokusek's clients are not indicted in *Black*, nor was Ms. Rokusek counsel in *Black*, the case subject to the grand jury investigation.

Other defendants may be entitled to relief based on grand jury violations. The full scope of potential Rule 6(e) violations is not yet known. As such, it is premature at this point for the defense to seek specific relief or

---

[49] *Bank of Nova Scotia v. United States*, 487 U.S. 250, 254 (1988) ("We hold that, as a general matter, a district court may not dismiss an indictment for errors in grand jury proceedings unless such errors prejudiced the defendants."). The Department of Justice has observed that it may prosecute government attorneys who obtain grand jury information in his or her official capacity for criminal contempt other 18 U.S.C. § 401(3), as well as under other criminal statutes, if he or she makes an unauthorized disclosure of grand jury information. *See* Criminal Resource Manual § 156 (Dep't of Justice Oct. 2012).

[50] *See, e.g.*, 18 U.S.C. § 3500(e)(3) (Jencks Act) )("The term 'statement', as used in subsections (b), (c), and (d) of this section in relation to any witness called by the United States, means – a statement, however taken or recorded, or a transcript thereof, if any, made by said witness to a grand jury.").

[51] Tr. 8/9/16 at 37-38.

attempt to litigate without a full knowledge of the facts. The defense has made a particular showing why grand jury materials should be produced to the Special Master. This request is narrowly tailored to effectively assist the Court in determining whether further inquiries are required after the Special Master reviews and analyzes the grand jury materials.

## Conclusion

For these reasons, the defense asks the Court order immediate disclosure of grand jury materials to the Special Master.

Respectfully submitted,

s/ Melody Brannon
MELODY BRANNON #17612
Federal Public Defender
for the District of Kansas
117 SW 6th Avenue, Suite 200
Topeka, Kansas 66603-3840
Phone: 785-232-9828
Fax: 785-232-9886
Melody_Brannon@fd.org

s/ Kirk C. Redmond
KIRK C. REDMOND #18914
First Assistant Federal Public Defender
for the District of Kansas
117 SW 6th Avenue, Suite 200
Topeka, Kansas 66603-3840
Phone: 785-232-9828
Fax: 785-232-9886
Kirk_Redmond@fd.org

s/ Branden A. Bell
BRANDEN A. BELL #22618
Assistant Federal Public Defender
for the District of Kansas
117 SW 6th Avenue, Suite 200
Topeka, Kansas 66603-3840
Phone: 785-232-9828
Fax: 785-232-9886
Branden_Bell@fd.org

s/ Rich Federico
RICH FEDERICO, IN# 23818-89
Staff Attorney
for the District of Kanas
117 SW 6th Avenue, Suite 200
Topeka, Kansas 66603-3840
Phone: 785-232-9828
Fax: 785-232-9886
Rich_Federico@fd.org

## **CERTIFICATE OF SERVICE**

I hereby certify that on February 28, 2017, I electronically filed the foregoing with the clerk of the court by using the CM/ECF system which will send a notice of electronic filing to the following:

David R. Cohen
David R. Cohen Co., LPA
Special Master
david@specialmaster.biz

Donald Christopher Oakley
Assistant United States Attorney
Office of the United States Attorney – Kansas City
chris.oakley@usdoj.gov

Debra L. Barnett
Criminal Chief
Assistant United States Attorney
Office of the United States Attorney – Wichita
debra.barnett@usdoj.gov

Duston J. Slinkard
Assistant United States Attorney
Office of the United States Attorney- Topeka
duston.slinkard@usdoj.gov

John Jenab
Jenab Law Firm, PA
john.jenab@gmail.com

David J. Guastello
The Guastello Law Firm, LLC
david@guastellolaw.com

Jason P. Hoffman
Hoffman & Hoffman
jphoffman@sbcglobal.net

Kathleen A. Ambrosio
Ambrosio & Ambrosio Chtd.
kaambrosio@yahoo.com

Michael M. Jackson
jacksonmm@aol.com

Cynthia M. Dodge
Cynthia M. Dodge, LLC
cindy@cdodgelaw.com

Shazzie Naseem
Berkowitz Oliver LLP - KCMO
snaseem@berkowitzoliver.com

Erin C. Thompson
Foland, Wickens, Eisfelder, Roper, Hofer, PC
ethompson@fwpclaw.com

Jacquelyn E. Rokusek
Rokusek Law, LLC
rokuseklawoffice@yahoo.com

Jonathan L. Laurans
jlaurans@msn.com

Melanie S. Morgan
Morgan Pilate LLC
mmorgan@morganpilate.com

                                        s/ Melody Brannon
                                        Melody Brannon