**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

**UNITED STATES OF AMERICA,**
*Plaintiff,*
**v.** Case No. **16-20032-JAR**

**LORENZO BLACK, *et al.*,**
*Defendants.*

---

**FEDERAL PUBLIC DEFENDER'S REPLY TO THE UNITED STATES' RESPONSE TO THE MOTION FOR PRODUCTION OF GRAND JURY MATERIALS TO THE SPECIAL MASTER**

---

The Federal Public Defender (FPD) respectfully replies to the Government's Response.[1] For reasons detailed below, the FPD renews its request that the Court order production of grand jury materials to the Special Master so findings can be made regarding whether and how attorney-client privileged communications were returned, presented, or used by the grand jury and whether disclosure of these materials should then be made to defense.

***I. The FPD and its clients have a strong interest in this case.***

The United States argues the relief sought by the FPD in the underlying motion "exceeds any interest the FPD has in protecting clients' potentially

[1] D.E. 218.

privileged communications."[2] As an initial matter, the FPD is a party to this litigation at the authorization of the Court, not the government.[3] The government previously recognized that the "recordings, and their handling, present unique issues that require the Court's attention."[4] The FPD has a strong interest in this case not only because the issues are unique, but also because the actions of the government implicate the rights of clients beyond the six defendants indicted in the *Black* case.

The FPD entered an appearance in this case on August 5, 2016, after it learned that the U.S. Attorneys' Office for the District of Kansas (USAO), and its agents, recorded attorney-client meetings at CCA-Leavenworth and sought to use the existence of the recordings against a CJA panel defense lawyer to force her to withdraw from a case.[5] At the time the FPD filed its first motion[6] in this case, the full scope of the government's infiltration of attorney-client privileged communications, in violation of the constitutional

---

[2] *Id*. at 2.

[3] In other words, the FPD does not need the consent of the government to enter an appearance and file pleadings in a case, despite the implied assertion to the contrary in the government's response.

[4] D.E. 110 at 10.

[5] The case the USAO sought to conflict Ms. Rokusek from representing her client is one in which the FPD represents a co-defendant, *United States v. Rapp, et.al*. (14-cr-20067-CM).

[6] D.E. 82 (Motion for Fed. R. Crim. P. 41(g) Return of Information).

rights of defendants in the District of Kansas, was unknown. Although that still remains true, many more facts have since come to light that have significantly amplified the original concerns.

For example, since the date the FPD first entered the case and subsequently sought the appointment of a Special Master to assist the Court in assessing the full scope of the government's conduct, the Special Master determined that *every* attorney-client meeting at CCA-Leavenworth during the period between February 20 and May 16, 2016 was video recorded.[7] These recordings were turned over to the USAO after it sought a grand jury subpoena to produce them.[8] The recordings necessarily included many recordings of FPD attorneys meeting with their clients at CCA-Leavenworth.

As another example, subsequent to the FPD entering the case, *uncontested* evidence emerged that the government also possessed recordings of phone

[7] Special Master's First Report Regarding Video Recordings (D.E. 193) at 5. The Special Master later concluded that the video recordings do not include audio. *See* Special Master's Report Regarding Other Issues Related to Recordings at CCA-Leavenworth (D.E. 214) at 2. However, video of these meetings still includes attorney-client privileged communication and implicates the Sixth Amendment. *See* Tr 8/16/16 at 62-64 (Testimony of Richard Ney); at 93-96 (Testimony of Prof. Peter Joy); *Case v. Andrews*, 226 Kan. 786, 790 (Kan. 1979) ("the Lyon County jail policy of visually monitoring all consultations between attorneys and client is an unreasonable interference with the right to confidential attorney-client communications.")

[8] Def. Ex. 438.

calls between clients detained at CCA-Leavenworth and their lawyers.[9] The phone call records were also obtained by the USAO through the issuance of a grand jury subpoena.[10] Attorney-client privileged phone calls between clients at CCA-Leavenworth, not indicted in the *Black* case, and their attorneys were distributed in discovery in this case.[11] Setting aside the privileged nature of these communications, they also had no relevance or materiality to the *Black* case, yet they were still produced in discovery. Attorney-client privileged phone calls between FPD clients detained at CCA-Leavenworth and FPD lawyers were also recorded and maintained by Securus.[12] The Special Master discovered that 188 phone calls from clients to "private" attorney phone numbers were not only recorded and maintained by Securus, but actually accessed by law enforcement or produced to a grand jury by subpoena.[13] The identity of the clients and lawyers on those recordings is currently unknown by the parties but subject to a separate filing.[14]

---

[9] Tr. 8/6/16 at 18-22; Def. Ex.

[10] Govt. Ex. 21; Tr. 9/7/16 at 26-27.

[11] Def. Ex. 449.

[12] Def. Ex. 451 at para. 6 (Affidavit of Gary W. Hart).

[13] D.E. 214 at 23-24.

[14] D.E. 220.

Finally, the government's attempt to narrow "the scope of the FPD's role as an intervener in this case,"[15] rings hollow when it was the USAO that used privileged recordings it obtained by grand jury subpoena in the *Black* case as an instrument to exert leverage over a defense lawyer in the *Rapp* case. In other words, the government lacks clean hands to prevail on an argument to limit the scope of the FPD's role when it was the government that crossed the boundaries of the *Black* case into the *Rapp* case. It was the government that used a grand jury in the *Black* case to receive video recordings of FPD and other lawyers meeting with their clients at CCA-Leavenworth. It was the government that recorded "private" phone calls made by FPD clients at CCA-Leavenworth and FPD attorneys. As such, the FPD shares common questions of law and fact with the defendants in the *Black* case. Additionally, as the office with the primary responsibility to provide zealous representation to indigent criminal defendants in the District of Kansas, the FPD has a strong interest in the outcome of this motion and the entirety of the scope of the Special Master's inquiry in the *Black* case.

---

[15] D.E. 218 at 3.

## *II. There is a factual predicate and particularized need to grant the production of grand jury materials under seal to the Special Master.*

The parties largely agree on the legal principles that underlie the FPD's motion. However, the government argues that "the motion does not provide facts in support of its request" and states the FPD motion makes "conclusory allegations."[16] The defense easily meets the burden of proof and production regarding the relief it seeks in the motion. The facts detailed in the motion, which will not be fully recited herein, are uncontested and sharply demonstrate that the government used the compulsory power of the grand jury to seek and obtain video and audio recordings of attorney-client privileged communications.

The only reason the defense learned the USAO possessed privileged communications is because the USAO first disclosed it to a defense attorney in an unrelated case to exert leverage over her. It was later learned the USAO disseminated recordings of privileged communications in discovery. The veil of grand jury secrecy was thus removed by the government. The grand jury subpoenas are already accepted by the Court as exhibits in this case.[17] The government also explained in open court its use of grand jury

[16] D.E. 218 at 7.

[17] Def. Ex. 438; Govt. Ex. 21.

subpoenas to acquire recordings of attorney-client privileged communications.[18] At this point, the only facts unknown are those which the motion seeks to discover – how and to what extent privileged communications were presented to the grand jury.

The government further raises the "presumption of regularity" afforded to grand jury proceedings as a bar to the relief sought in the motion.[19] The government relies on *United States v. R Enterprises, Inc.*,[20] as authority to assert that the defense has not "overcome" a "demanding legal threshold."[21] This argument mischaracterizes what the defense motion is asking the Court to do. Unlike the movant in *R Enterprises*, the defense is not seeking to quash a subpoena issued by a grand jury.[22] Rather, the defense seeks a review of the grand jury investigation by the Special Master to determine whether grand

---

[18] Tr. 9/7/16 at 13 (SAUSA Tomasic: [t]he government had a good faith basis to believe that the CCA video-recordings contained attorney-client meetings at the time the issue – the subpoena was issued."); at 26-27 (SAUSA Tomasic: There was a subpoena issued in April that the government also has and can admit. But it is a grand jury subpoena, so we would request to admit it under seal.").

[19] D.E. 218 at 7.

[20] 498 U.S. 292 (1991).

[21] D.E. 218 at 8.

[22] *R. Enterprises, Inc.*, 498 U.S. at 294 ("This case requires the Court to decide what standards apply when a party seeks to avoid compliance with a subpoena *duces tecum* issued in connection with a grand jury investigation.").

jury secrecy was maintained, grand jury subpoena power abused, or other legal and ethical violations may give rise to relief for one or more defendants in the *Black* case and beyond. Indeed, the recipient of the subpoenas (Corrections Corporation of America – Leavenworth) that produced attorney-client privileged communications was not a criminal defendant, but a prison and government agent.[23] Thus, whether the grand jury subpoenas were reasonable may necessarily be included within that inquiry, but is not the primary focus.

The parties agree that three thresholds must be met to warrant disclosure of grand jury materials.[24] The defense motion easily clears these hurdles:

(1) *The materials are needed to avoid a possible injustice in another judicial proceeding.*

As stated, the government's use of privileged communications spilled over beyond the *Black* case. The full scope of the violations or government misconduct remains the primary focus of the Special Master's inquiry. The

---

[23] D.E. 210 at 1-2 ("CoreCivic, formerly known as Corrections Corporation of America (CCA) is a private, publically traded corporation. CCA operates private detention facilities in the United States, contracting with government entities. … Therefore, CCA-Leavenworth is a prison as defined by Title 18, United States Code, Section 1791.").

[24] (1) the materials are needed to avoid a possible injustice in another judicial proceeding, (2) the need for disclosure is greater than the need for continued secrecy, and (3) the request is structured to cover only material so needed. *In re Special Grand Jury 89-2*, 143 F.3d 569-70 (10th Cir. 1998).

defense need not prove to the Court at this point every case and client in which an injustice or rights violation may require vindication. Rather, it is enough that at least one client may suffer injustice from the wrongful recording of privileged communications, and use of the compulsory power of the grand jury by the USAO to acquire and use these communications in other cases.

Also, government argues that recordings obtained from CCA "are in the custody of the Court and unavailable for use by the United States."[25] The defense seeks to know whether attorney-client privileged communications were presented and used by a grand jury in the past, not whether the government intends to use them in the future. The fact that the communications have been retrieved and impounded by the Court has no bearing on the issue presented in the motion.

*(2) The need for disclosure is greater than the need for continued secrecy.*

The government argues that several problems could arise if the grand jury materials are produced to the Special Master, including: people accused but exonerated by the grand jury could be subject to public ridicule, witnesses might be hesitant to testify before future grand jury proceedings, and that grand jury targets may flee the jurisdiction or attempt to influence grand

[25] D.E. 218 at 8.

jurors in their deliberations.[26] The defense requested the grand jury materials be produced to the Special Master alone and under seal. There is thus no risk of these problems arising, nor are they yet ripe for consideration. To the extent the Special Matter later determines that disclosure of grand jury materials should be made to the defense, the parties may at that point brief the Court on whether the government's concerns and need to maintain secrecy outweigh the need to make disclosures to the defense.

*(3) The request is structured to cover only material so needed.*

As to the third factor, the government argues that "movant has made no attempt to structure the request to cover only material needed."[27] By the USAO's own statements,[28] the grand jury investigation in this case was vast, including the volume of recordings it obtained by subpoena. The materials needed are all grand jury matters that may pertain to or include attorney-client privileged materials. Again, the defense is seeking production to the Special Master, under seal, not production to individual defense lawyers.

---

[26] *Id*. at 9 (*citing Douglas Oil Co. v. Petrol Stops Northwest*, 441 U.S. 211, 218-19 (1979)).

[27] D.E. 218 at 9.

[28] Tr. 7/21/16 at 23 (SAUSA Tomasic: "And so it is a fairly widespread conspiracy); Tr. 9/7/16 at 27 (SAUSA Tomasic: "At a certain point in the investigation, Marshal Cahill and other agents involved recognized that the conspiracy spanned several years.").

The appointment of a Special Master to this case was indicative of the fact that the issues presented are ones that "cannot be effectively and timely addressed" by the Court alone.[29] The Special Master has thus far proven extremely capable of analyzing volumes of information and distilling it down to the core facts at issue.

***III. The present motion is one part of what should be an expanded inquiry by the Special Master.***

In his last report, the Special Master recommended a list of actions the Court may want to consider that would expand the inquiry in this case beyond the initial phases in the appointment order.[30] For reasons that will be explained in a separate filing, the defense concurs that additional inquiry is needed. Indeed the key questions concerning the government's actions or misconduct, which violated the constitutional rights of criminal defendants in the District of Kansas, have yet to be answered. To that end, the underlying motion to produce grand jury materials should be included within the expanded inquiry to be conducted by the Special Master.

---

[29] D.E. 146 at 3 (quoting Fed. R. Civ. P. 53(a)(1)(C)).

[30] D.E. 214 at 28.

Respectfully submitted,

s/ Melody Brannon
MELODY BRANNON #17612
Federal Public Defender
for the District of Kansas
117 SW 6th Avenue, Suite 200
Topeka, Kansas 66603-3840
Phone: 785-232-9828
Fax: 785-232-9886
Melody_Brannon@fd.org

s/ Rich Federico
RICH FEDERICO, IN# 23818-89
Staff Attorney
for the District of Kanas
117 SW 6th Avenue, Suite 200
Topeka, Kansas 66603-3840
Phone: 785-232-9828
Fax: 785-232-9886
Rich_Federico@fd.org

s/ Kirk C. Redmond
KIRK C. REDMOND #18914
First Assistant Federal Public Defender
for the District of Kansas
117 SW 6th Avenue, Suite 200
Topeka, Kansas 66603-3840
Phone: 785-232-9828
Fax: 785-232-9886
Kirk_Redmond@fd.org

s/ Branden A. Bell
BRANDEN A. BELL #22618
Assistant Federal Public Defender
for the District of Kansas
117 SW 6th Avenue, Suite 200
Topeka, Kansas 66603-3840
Phone: 785-232-9828
Fax: 785-232-9886
Branden_Bell@fd.org

## CERTIFICATE OF SERVICE

I hereby certify that on March 27, 2017, I electronically filed the foregoing with the clerk of the court by using the CM/ECF system which will send a notice of electronic filing to the following:

David R. Cohen
David R. Cohen Co., LPA
Special Master
david@specialmaster.law

Donald Christopher Oakley
Assistant United States Attorney
Office of the United States Attorney – Kansas City
chris.oakley@usdoj.gov

Debra L. Barnett
Criminal Chief
Assistant United States Attorney
Office of the United States Attorney – Wichita
debra.barnett@usdoj.gov

Duston J. Slinkard
Assistant United States Attorney
Office of the United States Attorney- Topeka
duston.slinkard@usdoj.gov

John Jenab
Jenab Law Firm, PA
john.jenab@gmail.com

David J. Guastello
The Guastello Law Firm, LLC
david@guastellolaw.com

Jason P. Hoffman
Hoffman & Hoffman
jphoffman@sbcglobal.net

Kathleen A. Ambrosio
Ambrosio & Ambrosio Chtd.
kaambrosio@yahoo.com

Michael M. Jackson
jacksonmm@aol.com

Cynthia M. Dodge
Cynthia M. Dodge, LLC
cindy@cdodgelaw.com

Shazzie Naseem
Berkowitz Oliver LLP - KCMO
snaseem@berkowitzoliver.com

Erin C. Thompson
Foland, Wickens, Eisfelder, Roper, Hofer, PC
ethompson@fwpclaw.com

Jacquelyn E. Rokusek
Rokusek Law, LLC
rokuseklawoffice@yahoo.com

Jonathan L. Laurans
jlaurans@msn.com

Melanie S. Morgan
Morgan Pilate LLC
mmorgan@morganpilate.com

s/ Melody Brannon
Melody Brannon