# UNITED STATES DISTRICT COURT
## District of Kansas

**UNITED STATES OF AMERICA,**

        Plaintiff,

        v.                              Case No. 16-20032-JAR

**LORENZO BLACK *et al.*,**

        Defendants.

### UNITED STATES' NOTICE OF RECORD CLARIFICATION AND CORRECTION

Comes now the United States of America, by and through Thomas E. Beall, United States Attorney for the District of Kansas, and Debra L. Barnett, Assistant United States Attorney, and pursuant to D. Kan. Local Rule 83.6.1 and Kansas Rules of Professional Conduct 3.3, 3.4 and 4.1, provides notice to the Court and counsel of the following information in order to clarify and correct any prior representations that may be deemed misleading due to the omission of this information from the record.

1. On June 19, 2017, the United States filed a Notice of Record Correction (Doc. 176) in *United States v. Herrera-Zamora*, District of Kansas Case No. 14-

20049-01-CM, detailing information that required correction in the record in that matter. A copy of that Notice is attached hereto as Exhibit 1 and incorporated herein by reference.

2. This information is provided to the Court and counsel to clarify and correct any and all prior representations that may be deemed misleading or potentially misleading. In particular, the United States, after a review of the record in the instant matter, corrects two specific areas of information provided to the Court at the September 7, 2016 hearing.

3. Specifically, at the September 7, 2016 hearing, as reflected in the transcript at pages 25 and 26, the Court asked Special Assistant United States Attorney Erin S. Tomasic if inmates had been notified that calls with their attorneys were recorded, and Ms. Tomasic responded as follows:

> Prior to the August 9th hearing, the only instance I knew where an agent had encountered attorney-client video – or excuse me, attorney-client recordings, audio-recordings, inmate calls, he told me, I immediately contacted our professional responsibility point of contract [sic]. He e-mailed PRAO. PRAO gave an advisory opinion.
>
> And then in further discussion with our professional responsibility point of contact, I e-mailed the attorney, let him know we had encountered them, let him know that an agent had inadvertently listened to between 10 and 15 seconds and that we did not intend to listen to them anymore. And I have in evidence – the government can admit that e-mail to the defense attorney that was sent as part of this investigation.

2

>THE COURT: All right. I would suggest at the close of all of these questions – I assume you have these marked. And what I'll have you do is just describe them by exhibit number and I'll admit all of that for the record.
>
>Have the inmates been given an opportunity to assert their privilege?
>
>MS. TOMASIC: Could you clarify that point?
>
>THE COURT: Well, if they're not notified that the recordings exist, when have they had an opportunity to assert their privilege with respect to those recordings?
>
>MS. TOMASIC: The only inmate-attorney call that I was aware was encountered, I notified the attorney immediately. After this issue has arisen, I've spoken with all the agents who listened to calls in this case, and they did state that they had encountered some additional attorney calls, did not listen to them, minimized immediately. But neither Chris Oakley nor I were ever told about those particular calls, because an agent other than Jeff Stokes is the one who encountered the calls and they used a different procedure.

(Transcript of 9/7/16 Hearing, Doc. 135, at pp. 25-26.)

    4. Given that the attorney-client call Ms. Tomasic described involved an attorney for a defendant in *United States v. Rapp*, District of Kansas Case No. 14-20067-01-CM, the United States believes that her answer was intended more broadly than with reference only to the investigation in the instant case and, as such, that the information about her review of calls in the *Herrera-Zamora* case necessitates correction of her response.

5. Later, during the September 7, 2016 hearing, the Court asked Ms. Tomasic if she notified any other defense counsel "that their calls with clients at CCA were being recorded or perhaps were being recorded?" (Transcript of 9/7/16 Hearing, Doc. 135, at p. 50.) The following exchange then occurred:

> MS. TOMASIC: No, Your Honor. Because this – based on my understanding, this was an exceptional circumstance where an attorney did not block his or her number.
>
> THE COURT: Are you aware of any other instance in which an attorney or agent listed – listened to recordings attorney-client phone calls?
>
> MS. TOMASIC: Since the first hearing, I have questioned the agents and I am aware of additional circumstances where, for example, Marshal Cahill encountered one attorney call. And he estimates that he listened to between 500 and 1,000 calls as part of this investigation. He encountered one call, it was an outgoing call from a female inmate. And when the phone picked up, it said, "law office," that's it. It was a receptionist he assumes, and then he hung up – he discontinued listening to that call.
>
> THE COURT: Okay.
>
> MS. TOMASIC: There may be additional instances where other agents encountered calls. Again, I would have only learned of those after this first hearing. For example, I believe Deputy U.S. Marshal Zac Howard encountered some attorney calls. But again, he said the phone was answered "law office," and he discontinued listening. So there was no substance that was encountered.
>
> THE COURT: Okay. In the past, has the U.S. Attorney's Office used attorney-client recordings in any other cases, to your knowledge?

MS. TOMASIC: Used them?

THE COURT: In any way.

MS. TOMASIC: I can think of – well, first of all, I'm not in a position to know for everyone else, so I don't want to speak to that. I can think of one instance in which I, along with another AUSA, subpoenaed calls to a particular attorney's – not subpoenaed, either requested or subpoenaed calls to an attorney's cell phone number. Those were provided to a Taint Team, because we had reason to believe, based on the attorney's representations, that he was communicating with other inmates who were represented by counsel without contacting their attorney first.

And the Taint Team went through those calls to find the calls with the other inmates. And that information was provided to a Taint attorney not associated with the investigation, and that that investigation is – not that that investigation – that matter is pending at this time in another court.

THE COURT: All right.

MS. TOMASIC: And the purpose of those phone calls with the other inmates was to procure them as witnesses and wasn't necessarily beneficial to either interest. And the attorney knew that those other inmates were represented by counsel, and he was intentionally not going through their attorneys.

THE COURT: All right. Let's see, I think we've talked – I asked you about the computers in the law library, a Taint Team involved, but none of that has been viewed by the Taint Team yet. It's been imaged, but nobody has gone through any of that yet –

(*Id.,* at pp. 50-53.)

6. In context, Ms. Tomasic's responses were intended more broadly

than with reference only to the investigation in the instant case and, as such, the information about her review of calls in the *Herrera-Zamora* case requires correction of her responses. Moreover, it appears the example Ms. Tomasic provided for prior use of a "Taint Team" to filter potential attorney client calls was the actual event from the *Herrera-Zamora* case that is described in Exhibit 1.

7. In addition to the information contained in the attached Notice of Correction filed in the *Herrera-Zamora* case, Ms. Tomasic, on May 10, 2017, also disclosed to AUSA Scott Rask, her supervisor, that she listened to a CCA recorded call of Ashley Huff who is a defendant in *United States v. Rapp et al.*, District of Kansas Case No. 14-20067-CM. Ms. Tomasic reported that she decided to listen to one of Ms. Huff's calls before a contested sentencing hearing scheduled for August 3, 2016. During this call, Ms. Tomasic reported that Ms. Huff called her (Ms. Huff's) mother's friend. While Ms. Huff was talking to the friend, her mother was talking to Ms. Huff's defense counsel, William Session. During this conversation, Ms. Tomasic stated that the friend held the phone in a manner so that it picked up some of the conversation with Mr. Session. Ms. Tomasic stated that she never identified to Mr. Session this conversation/call as one to which she had listened.

8. In this case, the United States prepared and filed a *Supplemental Memorandum in Support of Proposed Order to Appoint a Special Master, and Offer to Present Evidence*, Doc. 133, on September 6, 2016.  At pages 19 through 20 of that document, the United States discussed the case of *United States v. Ashley Huff*, District of Kansas Case No. 14-20067-09-CM.  Specifically, the memorandum stated, in part --

> …In other words, none of the information provided by the government during the May 16 hearing came from communications between Ms. Huff and her counsel.
>
> Any use of the May 16, 2016 hearing to support a suggestion that SAUSA Tomasic listened to and used direct attorney-client communications is false.   However, the transcript from an August 3, 2016 hearing in Ms. Huff's case, again addressed these same recorded calls between Ms. Huff and third parties, which provides additional helpful information.  The August 3rd hearing clearly shows that the parties to these recorded inmate calls were Ms. Huff and an unidentified male friend.  The transcript from the hearing reveals that Ms. Huff's attorney was aware the referenced inmate calls were between Ms. Huff and another individual, not Ms. Huff and her attorney.  Therefore, nothing in the *Huff* case was about recorded attorney calls, but rather Ms. Huff's statements in other calls recounting her conversations with her attorney to third parties.

(Doc. 133, p. 20.)

9. Based upon the information in Paragraph 7 above, the foregoing representation from Document 133 is corrected to reflect that one of the recorded phone calls reviewed by Ms. Tomasic in preparation for the August 3,

2016 sentencing hearing in *United States v. Huff* included audio of not only the defendant Ms. Huff, Ms. Huff's mother, and Ms. Huff's mother's friend, but also Ms. Huff's attorney.

10. The disclosures set forth herein and in the attached exhibit were based upon information provided by Ms. Tomasic to AUSA Scott Rask, her supervisor, and/or to AUSA David Zabel on May 10, 2017, and such information was and is contrary to the information previously known to counsel for the United States, excepting former SAUSA Tomasic.

WHEREFORE, the foregoing information is provided to the Court and counsel to clarify and correct any and all prior representations that may be deemed misleading or potentially misleading, and in particular, the two specific areas of information provided to the Court at the September 7, 2016 hearing and the one specific area of information provided to the Court in the *Supplemental Memorandum in Support of Proposed Order to Appoint a Special Master, and Offer to Present Evidence*, Doc. 133, on September 6, 2016. The United States makes the foregoing disclosures and corrections to ensure compliance with professional responsibility obligations.

Respectfully submitted,

THOMAS E. BEALL
United States Attorney

s/ Debra L. Barnett
DEBRA L. BARNETT
Assistant United States Attorney
United States Attorney's Office
301 N. Main, Suite 1200
Wichita, Kansas 67202
316-269-6481
K.S.Ct.No. 12729
debra.barnett@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that on June 19, 2017, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to all counsel of record.

s/ Debra L. Barnett
DEBRA L. BARNETT
Assistant United States Attorney