# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

**UNITED STATES OF AMERICA,**
*Plaintiff,*

**v.**                                    Case No. **16-20032-JAR**

**LORENZO BLACK, *et al.*,**
*Defendants.*

---

## MEMORANDUM OF LAW

---

The government asserts a shotgun full of privileges: the law-enforcement privilege, the attorney-client privilege, and the deliberative-process privilege.[1] The Court must evaluate the propriety of the government's privilege assertions under *Touhy*.[2] The following memorandum of law is intended to assist the Court in doing so.

---

[1] D.E. 334 at 12; Government counsel informed the FPD that the Department of Justice will not authorize any of the USAO witnesses to testify about any of the matters listed in the summaries of testimony in the *Touhy* request.

[2] *Sperandeo for and on Behalf of N.L.R.B. v. Milk Drivers and Dairy Emp. Local Union No. 537*, 334 F.2d 381, 384 (1964) ("It is for the Court, and not the governmental agency or executive branch, to determine whether documents sought to be withheld under a claim of privilege are entitled to the protection of that privilege."); *Saunders v. Great Western Sugar*, 396 F.2d 794, 795 (10th Cir. 1968) ("*Sperandeo* is distinguishable from the case at bar because there the governmental agency brought suit seeking judicial action and then refused to disclose. Here the SBA and its officials are not parties to the antitrust suit in the district court in which the disclosure is sought.").

## 1. Proper presentation of a privilege claim

The party asserting a claim of privilege has the burden to establish a privilege applies, and must establish that all elements of the privilege are met.[3] To carry that burden, the party must rely on record evidence.[4] An assertion of privilege "will not be considered unless presented in a deliberate, considered and reasonably specific manner[.]"[5] "Blanket claims" are insufficient.[6] The government cannot assert a privilege by

---

[3] *Peat, Marwick, Mitchell & Co. v. West*, 748 F.2d 540, 542 (10th Cir. 1984); *Motley v. Marathon Oil Co.*, 71 F.3d 1547, 1550 (10th Cir. 1995); *National Union Fire Ins. Co. v. Midland Bancor, Inc.*, 159 F.R.D. 562, 567 (D. Kan. 1994); *Johnson v. Gmeinder*, 191 F.R.D. 638 (D. Kan. 2000); *Black v. Sheraton Corp. of America*, 564 F.2d 531, 547 (D.C. Cir. 1977); *Robinson v. Magovern*, 83 F.R.D. 79 (W.D. Pa. 1979).

[4] *Johnson*, 191 F.R.D. at 643 ("While Defendants assert that some of the Crawford & Company documents are attorney-client communications, there is absolutely nothing in the record to support that assertion. The Court therefore finds that none of the documents are attorney-client privileged."); *Aull v. Cavalcade Pension Plan*, 185 F.R.D. 618, 624 (D. Colo. 1998)  (party asserting work product has the burden to establish privilege is applicable; party asserting waiver has the burden to establish waiver); *In re Gibco, Inc.*, 185 F.R.D. 296, 298 (D. Colo. 1997) (same); *Hatco Corp. v. W.R. Grace & Co.*, 1991 WL 83126 at *7 (D. N.J. 1991) (unpublished) ("[P]arty seeking to obtain protected work product bears the burden of proving that the protection has been waived."); *In re Convergent Technologies Second Half 1984 Securities Litigation*, 122 F.R.D. 555, 565 (N.D. Cal. 1988) ("[T]he party asserting waiver [of work product immunity] has the burden of proving the facts necessary to support the finding.").

[5] *Friedman v. Bache Halsey Stuart Shields, Inc.*, 738 F.2d 1336, 1342 (D.C. Cir. 1984).

[6] *In re Foster*, 188 F.3d 1259, 1264 (10th Cir. 1999) ("The party must bear the burden as to specific questions or documents, not by making a blanket claim."); *FDIC v. United Pac. Ins. Co.*, 152 F.3d 1266, 1276 n.6 (10th Cir. 1998).

merely "contend[ing]" that it applies.[7] Instead, the government official

asserting privilege must "have seen and considered the contents of the

documents and himself have formed the view that on grounds of public

interest they ought not to be produced and state with specificity the

rationale of the claimed privilege[.]"[8]

2. **Selective waiver of a privilege claim**

The government cannot selectively waive privileges; once it

discloses information, it "waives the privilege as to all other

communications dealing with the same subject matter."[9] When a

---

[7] *FDIC*, 152 F.3d at 1276 n.6.

[8] *Friedman*, 738 F.2d at 1242 (rejecting privilege invocation where "the files had not been examined for this purpose by responsible members or officers of CFTC. No specific documents or classes of documents had been identified."); *Matter of Grand Jury Subpoena Duces Tecum Issued on June 9, 1982 to Custodian of Records*, 697 F.2d 277, 279 (10th Cir. 1983) (Rejecting privilege invocation where "the Smiths had made a blanket assertion of privilege without explaining why a particular privilege attached to a particular document.").

[9] *Equity Residential v. Kendall Risk Management, Inc.*, 246 F.R.D. 557, 563 (N.D. Ill.  2007); *In re Quest Communications, Intern. Inc.*, 450 F.3d 1179, 1195 (10th Cir. 2006) (Declining to adopt selective waiver doctrine because "exceptions to the waiver rules necessarily broaden the reach of the privilege or protection, selective waiver must be viewed with caution."); *In re Columbia/HCA Healthcare Corp. Billing Practices*, 293 F.3d 289, 303 (6th Cir. 2002) ("The [patient] cannot be permitted to pick and choose among his opponents, waiving the privilege for some and resurrecting the claim of confidentiality as to others, or to invoke the privilege as to communications whose confidentiality he has already compromised for his own benefit."); *Burden–Meeks v. Welch*, 319 F.3d 897, 899 (7th Cir. 2003) (knowing disclosure to third party almost invariably surrenders privilege with respect to world at large; selective disclosure is not an option); *Westinghouse Elec. Corp. v.*

privileged "secret is out, it is out for all time, and cannot be cought [sic]

again like a bird, and put back in cage[.]"[10] In other words, the

government's decision to disclose information about a particular subject

waives claims of privilege as to that subject.[11]

---

*Republic of Philippines*, 951 F.2d 1414, 1427 (3rd Cir. 1991) (under traditional
waiver doctrine, voluntary disclosure to third party waives attorney-client privilege
even if third party agrees not to disclose communications to anyone else); *S.E.C. v.
Lavin*, 111 F.3d 921, 933 (D.C. Cir. 1997) (prohibition against selective disclosure of
confidential materials derives from appropriate concern that parties do not employ
privileges both as sword and shield, selectively disclosing privileged communication
to gain advantage in litigation).

[10] *People v. Bloom*, 85 N.E. 824, 826 (N.Y. 1908), *cited with approval in United
States v. Hudson*, 2013 WL 4768084 at *4 (D. Kan. 2013) (unpublished) ("Defendant
made the tactical decision to disclose information on confidential psychotherapy
sessions in an attempt to obtain disability benefits from the State of Kansas. He
cannot now invoke the psychotherapist-patient privilege to bar the federal
government from using the same information to show that he committed a crime.");
*In re Grand Jury*, 651 N.E.2d 696, 700 (Ill. App. 1995).

[11] *In re Steinhardt Partners, L.P.*, 9 F.3d 230, 235-36 (2nd Cir. 1993) (trader's
submission of legal memorandum to Securities and Exchange Commission (SEC)
waived work-product immunity); *Westinghouse Electric Corp. v. Republic of the
Philippines*, 951 F.2d 1414, 1428-30 (3rd Cir. 1991) (disclosures to SEC and
Department of Justice during investigations waived protections of both attorney-
client privilege and attorney work-product doctrine); *Cooper Hospital/University
Medical Center v. Sullivan*, 183 F.R.D. 119, 128-29 (D. N.J. 1998) (hospital's
disclosure of audit report to state attorney general and United States Attorney
during investigation of Medicaid fraud and violations of federal securities laws
waived work-product protection); *Schultz v. Talley*, 152 F.R.D. 181, 185 (W.D. Mo.
1993) (disclosure to state attorney general investigating college waived work-
product immunity).

### 3. Law-enforcement privilege

Hatched from the brain of J. Edgar Hoover,[12] the law-enforcement privilege has merited only a crabbed and grudging acceptance by reviewing courts.[13] The purpose of the privilege is to prevent injury to law-enforcement efforts "which might arise from public disclosure of ... investigatory files."[14] But because it is qualified, the law-enforcement privilege "may be overridden by the movant's substantial need for the

---

[12] Stephen Smith, *Policing Hoover's Ghost: The Privilege for Law Enforcement Techniques*, 54 Am. Crim. L. Rev. 233, 234 (Winter 2017) ("Although Hoover would not live to see the privilege recognized by any court, he could rightly claim paternity.").

[13] Smith, 54 Am. Crim. L. Rev. at 270 ("To date, only a minority of circuits has adopted Hoover's privilege, and no Supreme Court case has directly endorsed it."). In the spy case that motivated Hoover to begin advocating for the law-enforcement privilege, Judge Learned Hand issued an important reminder about the government's invocation of privileges. "Few weapons in the arsenal of freedom are more useful than the power to compel a government to disclose the evidence on which it seeks to forfeit the liberty of its citizens. All governments, democracies as well as autocracies, believe that those they seek to punish are guilty; the impediment of constitutional barriers are galling to all governments when they prevent the consummation of that just purpose. But those barriers were devised and are precious because they prevent that purpose and its pursuit from passing unchallenged by the accused, and unpurged by the alembic of public scrutiny and public criticism. A society which has come to wince at such exposure of the methods by which it seeks to impose its will upon its members, has already lost the feel of freedom and is on the path towards absolutism." *United States v. Coplon*, 185 F.2d 629, 638 (2nd Cir. 1950).

[14] *United States v. Winner*, 641 F.2d 825, 831 (10th Cir. 1981).

documents and its inability to obtain their substantial equivalent by other means."[15]

To evaluate applicability of the law-enforcement privilege, courts balance a number of factors.[16] But because of the public's interest in the free flow of information, this balancing must be undertaken "with an eye toward disclosure."[17]

---

[15] *In re M & L Business Mach. Co., Inc.*, 161 B.R. 689, 693-94 (D. Colo. 1993); *United States v. Davis*, 131 F.R.D. 391, 395 (S.D.N.Y. 1990) ("the Government concedes that the privilege may be overridden by General Dynamics' substantial need for the documents and its inability to obtain their substantial equivalent by other means"); *In re Department of Investigation*, 856 F.2d 481, 484 (2nd Cir. 1988); *Friedman v. Bache Halsey Stuart Shields, Inc.*, 738 F.2d 1336, 1341 (D.C. Cir. 1984).

[16] *Frankenhauser v. Rizzo*, 59 F.R.D. 339, 344 (E.D. Pa. 1973) ("(1) the extent to which disclosure will thwart governmental processes by discouraging citizens from giving the government information; (2) the impact upon persons who have given information of having their identities disclosed; (3) the degree to which governmental self-evaluation and consequent program improvement will be chilled by disclosure; (4) whether the information sought is factual data or evaluative summary; (5) whether the party seeking the discovery is an actual or potential defendant in any criminal proceeding either pending or reasonably likely to follow from the incident in question; (6) whether the police investigation has been completed; (7) whether any intradepartmental disciplinary proceedings have arisen or may arise from the investigation; (8) whether the plaintiff's suit is non-frivolous and brought in good faith; (9) whether the information sought is available through other discovery or from other sources; and (10) the importance of the information sought to the plaintiff's case."); *Sirmans v. City of South Miami*, 86 F.R.D. 492, 495 (S.D. Fla. 1980) ("The factors delineated in *Frankenhauser* although not exhaustive, are appropriate for a consideration of the privilege for the State Attorney's criminal investigative files.").

[17] *Tuite v. Henry*, 181 F.R.D. 175, 177 (D.D.C. 1998); *Angilau v. United States*, 2017 WL 5905536 at *10 (D. Utah 2017) (unpublished).

We make three observations about the balancing process. First, no balancing is possible, and therefore the privilege is inapplicable, unless the government makes a detailed invocation of the privilege. The Tenth Circuit requires that to "assert the law enforcement evidentiary privilege, the responsible official in the department must lodge a formal claim of privilege, after actual personal consideration, specifying with particularity the information for which protection is sought, and explain why the information falls within the scope of the privilege."[18] Unless the government "shows the court what interests would be harmed, how disclosure under a protective order would cause the harm, and how much harm there would be, the court cannot conduct a meaningful balancing analysis. And because the burden of justification must be placed on the party invoking the privilege, a court that cannot conduct a meaningful balancing analysis because the government has not provided the necessary information would have no choice but to order disclosure."[19]

---

[18] *United States v. Winner*, 641 F.2d 825, 831 (10th Cir. 1981); *United States v. Malik*, 2016 WL 3167307 at *10 (D. Kan. 2016) (unpublished) (same).

[19] *Kelly v. City of San Jose*, 114 F.R.D. 653, 669 (N.D. Cal. 1987).

Second, courts agree that speculative assertions of injury to law-enforcement are entitled to no weight in the balancing process.[20] Rather, disclosure often operates to improve law-enforcement

---

[20] *Mercy v. County of Suffolk*, 93 F.R.D. 520, 522 (E.D.N.Y.1982) ("No legitimate purpose is served by conducting the investigations under a veil of near total secrecy. Rather, knowledge that a limited number of persons, as well as a state or federal court may examine the file in the event of civil litigation may serve to insure that these investigations are carried out in an evenhanded fashion, that the statements are carefully and accurately taken, and that the true facts come to light, whether they reflect favorably on the individual police officers involved or on the department as a whole."); *Torres v. Kuzniasz*, 936 F. Supp. 2d 1201, 1211 (D.N.J. 1996) ("broad speculations of harm potentially flowing to the officers involved in generating the withheld documents are simply insufficient to support a finding of privilege"); *Burke v. New York City Police Dept.*, 115 F.R.D. 220, 229 (S.D.N.Y. 1987) ("[T]he harm envisaged by the Department to its ability to conduct internal investigations is, at best, quite speculative."); *Spell v. McDaniel*, 591 F. Supp. 1090, 1117 (E.D.N.C. 1984) ("[T]his court does not believe that the infrequent instances of court-ordered disclosure made after considered application of a detailed balancing test would deter citizens from revealing information to the police."); *Crawford v. Dominic*, 469 F. Supp. 260, 264 (E.D. Pa.1979) ("I do not accept the general proposition that citizens or fellow police officers will be less likely to give information concerning a police officer's conduct because in a few instances that information may be used in a later lawsuit."); *Frankenhauser*, 59 F.R.D. at 344 ("[W]e do not believe that rare instances of disclosure pursuant to a court order made after application of a balancing test comprising detailed standards such as those enumerated here would deter citizens from revealing information to the police."); Smith, 54 Am. Crim. L. Rev. at 274 ("Courts confronting claims to recognize or expand the privilege for law enforcement techniques should understand its recent vintage, and carefully scrutinize the modest pros and considerable cons of allowing law enforcement methods to escape the purging alembic of public scrutiny and criticism. Above all, courts should inquire why it is that, after two centuries of practice, the ordinary standards of relevance and materiality are no longer up to the task of sorting admissible from inadmissible evidence.").

organizations, counselling a narrow view of the law-enforcement privilege.[21]

Third, in considering whether similar evidence may be available from another source, "it is appropriate to place the burden of persuasion on this factor on the party asserting the privilege. Thus, if the government cannot show that information of comparable quality is as efficiently available from alternative sources, this factor should be weighed in favor of disclosure."[22]

### 4. Attorney-Client Privilege

Common-law notions of the attorney-client privilege do not apply to Department of Justice attorneys in criminal cases. With "respect to

---

[21] *Kelly*, 114 F.R.D. at 665 ("Fear of scrutiny by knowledgeable people motivated to be aggressive is likely to inspire police officers to conduct investigations and write reports that are less vulnerable to criticism, and the way to make them less vulnerable is to make them more thorough, more accurate and better reasoned. In short, officers will feel pressure to be honest and logical when they know that their statements and their work product will be subject to demanding analysis by people with knowledge of the events under investigation and considerable incentive to make sure that the truth comes out (i.e., a civil rights plaintiff and her lawyer). Thus there is a real possibility that officers working in closed systems will feel less pressure to be honest than officers who know that they may be forced to defend what they say and report.").

[22] *Kelly*, 114 F.R.D. at 667 ("in many cases it will not be likely that information of *comparable quality* will be available from any source") (citing cases) (emphasis in original).

investigations of federal criminal offenses, and especially offenses

committed by those in government, government attorneys stand in a far

different position from members of the private bar. Their duty is not to

defend clients against criminal charges and it is not to protect

wrongdoers from public exposure."[23] There is a growing agreement

among courts[24] and commentators[25] that "[u]sing the attorney-client

---

[23] *In re Lindsey*, 148 F.3d 1100, 1008 (D.C. Cir. 1998) ("Unlike a private practitioner, the loyalties of a government lawyer therefore cannot and must not lie solely with his or her client agency.")

[24] *In re Grand Jury Subpoena Duces Tecum*, 112 F.3d 910, 921 (8th Cir 1997) ("We believe the strong public interest in honest government and in exposing wrongdoing by public officials would be ill-served by recognition of a governmental attorney-client privilege applicable in criminal proceedings inquiring into the actions of public officials. We also believe that to allow any part of the federal government to use its in-house attorneys as a shield against the production of information relevant to a federal criminal investigation would represent a gross misuse of public assets."); *Kent Corp. v. NLRB*, 530 F.2d 612, 623-24 (4th Cir. 1976) (government claims of work-product privilege should be carefully reviewed because executive branch employs "unaccountable and ever-growing number of attorneys"); *In re Bruce Lindsey*, 158 F.3d 1263, 1274 (D.C. Cir. 1998) (finding a "strong congressional policy that executive branch employees must report information" relating to criminal wrongdoing, making the attorney-client privilege inapplicable in the federal grand-jury context); *In re A Witness Before the Special Grand Jury*, 288 F.3d 289, 294 (7th Cir. 2002) ("Finding attorney-client privilege inapplicable because "interpersonal relationships between an attorney for the state and a government official acting in an official capacity must be subordinated to the public interest in good and open government[.]"); *Lee v. Federal Deposit Insurance Corp.*, 923 F. Supp. 451, 457-58 (S.D.N.Y. 1996) (denying government's assertion of attorney-client privilege because the government did not show that it was "acting in a capacity similar to a 'private party seeking advice to protect personal interests.'"); *accord In re Grand Jury Investigation*, 399 F.3d 527 (2nd Cir. 2005).

[25] Kenneth Graham, 24 Fed. Prac. & Proc. Evid. § 5475 (1st ed.) (April 2017 update) ("It is far from clear that the common law attorney-client privilege could be claimed by governments; the caselaw is skimpy. Neither the Model Code of Evidence nor the

_____

Uniform Rules of Evidence seem to provide for this… In addition, the costs of the government privilege may be very high. Given the number of lawyers in government service and the number of governmental employees who may have information relevant to litigation by or against the government, administration of a governmental attorney-client privilege would present all of the problems courts are still struggling with in the application of the privilege to multinational corporations."); Lory Barsdate, *Attorney-Client Privilege for the Government Entity*, 97 Yale L.J. 1725, 1725-26 (July 1988) ("The attorney-client privilege protects communications between attorney and client from public disclosure. The privilege for individual clients has a venerable history in the common law. However, application of the privilege to public agencies lacks a sound basis in the theory underlying the privilege and may compromise the role of the government in litigation."); Nancy Leong, *Attorney-Client Privilege in the Public Sector: A Survey of Government Attorneys,* 20 Geo. J. Legal Ethics 163, 198 (Winter 2007) ("The most commonly cited rationale for the attorney-client privilege is instrumental: the privilege is necessary to facilitate candid communication between clients and attorneys. However, in the government entity context, this justification falls short. The protection afforded by the privilege is already uncertain, due to various open government provisions and political and media pressures, yet government employees continue to communicate with sufficient candor to allow government attorneys to provide effective representation."); Patricia Salkin, *Beware: What You Say to Your [Government] Lawyer Maybe Held Against You—The Erosion of Government Attorney-Client Confidentiality*, 35 Urb. Law. 283, 283-84 (Spring 1983) ("It is a basic rule of evidence, so common that the American public watching 'made for TV lawyering' knows it is true; conversations between lawyers and clients are afforded the privilege of confidentiality. During the last five years, however, this notion has not only been challenged, but to some extent, it has been turned upside down with respect to conversations between government lawyers and their clients. While many see this as a legacy of the Whitewater investigation and the Clinton White House, the phenomenon has manifested itself at the state and local level and has resulted in decisions in the Sixth, Seventh, Eighth, and Ninth Circuit Courts of Appeals."); Jessica Wang, *Protecting Government Attorney Whistleblowers: Why We Need and Exception to Government Attorney-Client Privilege*, 26 Geo. J. Legal Ethics 1063, 1064 (Fall 2013) ("Recent years have seen courts weakening the attorney-client privilege between government lawyers and their clients in federal grand jury investigations and federal criminal investigations.").

11

privilege to serve the government's needs for secrecy is like hammering a square peg into a round hole. The attorney-client privilege just does not fit a government client."[26]

## 5. Deliberative-Process Privilege

The deliberative-process privilege is designed to protect "open and frank discussion among government officials."[27] The government must establish that the deliberative-process privilege applies.[28] It can carry "that burden through the submission of evidence such as affidavits, a detailed privilege log, and other evidence."[29] But even where the government meets its burden, "the privilege is a qualified one and can

---

[26] Bryan Gowdy, *Should the Federal Government Have an Attorney-Client Privilege?*, 51 Fla. L. Rev. 695, 720 (Sept. 1999).

[27] *Dept. of Interior v. Klamath Water Users Protective Assn.*, 532 U.S. 1, 9 (2001); *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 150-51 (1975).

[28] *Center v. Biological Diversity v. Norton*, 336 F. Supp. 2d 1149, 1153-4 (D. N.M. 2004); *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 868 (D.C. Cir. 1980).

[29] *Cherokee Nation v. Salazar*, 986 F. Supp. 2d 1239, 1245 (N.D. Okla. 2013); *Loving v. Department of Defense*, 550 F.3d 32, 41 (D.C. Cir. 2008); *Boyd v. Department of Justice*, 475 F.3d 381, 392 (D.C. Cir. 2007); *Coastal States*, 617 F.2d at 861; *Trentadue v. Integrity Committee*, 501 F.3d 1215, 1230 (10th Cir. 2007) (conducting line-by-line examination of whether particular document met deliberative-process privilege).

be overcome by a sufficient showing of need."[30] If the government has

released information relating to the subject against which it seeks to

assert the deliberative-process privilege, courts have found waiver.[31]

To appropriately assert the deliberative-process privilege, "two

requirements are clear: Privileged information must be both

predecisional and deliberative."[32] Predecisional information is prepared

"to assist an agency decision-maker in arriving at his decision ... and

may include recommendations, draft documents, proposals, suggestions,

and other subjective documents which reflect the personal opinions of

the writer rather than the policy of the agency."[33] The Tenth Circuit has

---

[30] *Cherokee Nation*, 986 F. Supp. 2d at 1245, *quoting In re Sealed Case*, 121 F.3d 729, 738 (D.C. Cir. 1997).

[31] *Brown v. City of Detroit*, 259 F. Supp. 2d 611, 623 (E.D. Mich. 2003) (when government "engaged in self-serving leaks of select portions" of the material it asserts is protected by the deliberative-process privilege, "it is precisely under such conditions that privileges are deemed to be waived"); *United States v. Bilzerian*, 926 F.2d 1285, 1292 (2nd Cir.1991) (cautioning that a privilege may not be invoked "to disclose some selected communications for self-serving purposes," and that it "may implicitly be waived when [a party] asserts a claim that in fairness requires examination of protected communications").

[32] *Trentadue*, 501 F.3d at 1227; *Center v. Biological Diversity v. Norton*, 336 F. Supp. 2d 1149, 1153 (D.N.M. 2004) ("To fall within the deliberative process privilege, documents must be pre-decisional in nature and must also form part of the agency's deliberative process.").

[33] *Center v. Biological Diversity*, 336 F. Supp. 2d at 1553; *Formaldehyde Inst. v. Dep't. of Health and Human Services*, 889 F.2d 1118, 1122 (D.C.Cir.1989) (citations and internal quotation marks omitted).

identified two factors which may determine whether information is predecisional: the "nature of the decision-making authority vested in the officer or person issuing the disputed document, and the relative positions in the agency's chain of command occupied by the document's author and recipient."[34] Put more simply, inter-agency information travelling from a subordinate to a superior is more likely to be predecisional in character than documents traveling in the opposite direction.[35]

Whether information is deliberative "has proven more difficult to cabin."[36] But the Tenth Circuit has decided that factual averments are very rarely deliberative: "Anyone making a report must of necessity select the facts to be mentioned in it; but a report does not become a part of the deliberative process merely because it contains only those facts which the person making the report thinks material. If this were not so, every factual report would be protected as a part of the

---

[34]*Casad v. U.S. Dept. Health and Human Services*, 301 F.3d 1247, 1252 (10th Cir. 2002), *Citing Taxation with Representation Fund v. IRS*, 646 F.2d 666, 678 (D.C. Cir. 1981); *Arthur Andersen & Co. v. IRS*, 679 F.2d 254, 258 (D.C. Cir. 1982); *Schlefer v. United States*, 702 F.2d 233, 238 (D.C. Cir. 1983).

[35] *Casad*, 301 F.3d at 1252, *citing Schlefer*, 702 F.2d at 238.

[36] *Trentadue*, 501 F.3d at 1227.

deliberative process."[37] So, facts are not privileged unless "(1) they are inextricably intertwined with deliberative materials, or (2) their disclosure would reveal deliberative material."[38]

But the deliberative-process privilege "disappears altogether when there is any reason to believe government misconduct occurred."[39] When the subject of the litigation "is directed at the government's intent... it makes no sense to permit the government to use the privilege as a shield... if either the Constitution or a statute makes the nature of governmental officials' deliberations the issue, the privilege is a

---

[37] *Trentadue*, 501 F.3d at 1230.

[38] *Id.* at 1229-30; *S.E.C. v. Goldstone*, 301 F.R.D. 593, 655 (D.N.M. 2014) ("A pre-decisional document may include recommendations, proposals, suggestions, and other subjective evaluations which reflect the personal opinions of the writer, and which discuss the wisdom or merits of a particular agency policy or recommend new agency policy."); *Cal. Assembly v. U.S. Dep't of Commerce*, 968 F.2d 916, 921 (9th Cir. 1992) (asserting that the policy behind the distinction is that government has "no legitimate interest in keeping the public ignorant of the facts the agencies worked from").

[39] *In re Sealed Case*, 121 F.3d 729, 746 (D.C. Cir. 1997) (noting that "if the plaintiff's cause of action is directed at the government's intent... it makes no sense to permit the government to use the privilege as a shield"); *In re Subpoena Duces Tecum Served on the Office of the Comptroller of the Currency*, 145 F.3d 1422, 1424, *modified on reh'g in part*, 156 F.3d 1279 (D.C. Cir. 1998) (noting that "if the plaintiff's cause of action is directed at the government's intent... it makes no sense to permit the government to use the privilege as a shield").

nonsequitur."[40] Consequently, where the information "sought may shed light on alleged government malfeasance, the privilege is routinely denied."[41]

---

[40] *In re Subpoena Duces Tecum Served on the Office of the Comptroller of the Currency*, 145 F.3d at 1424.

[41] *Texaco Puerto Rico v. Department of Consumer Affairs*, 60 F.3d 867, 885 (1st Cir. 1995); *In re Franklin Natl. Bank Securities Litigation,* 478 F. Supp. 577, 582 (E.D. N.Y. 1979) (same); *Williams v. City of Boston*, 213 F.R.D. 99, 102 (D. Mass. 2003) ("[W]here, as here, the 'decision-making process itself is the subject of the litigation,' it is inappropriate to allow the deliberative process privilege to preclude discovery of relevant information.") (quoting *Burka v. NYC Transit Auth.*, 110 F.R.D. 660, 667 (S.D.N.Y. 1986); *Soto v. City of Concord*, 162 F.R.D. 603, 612 (N.D. Cal. 1995) (rejecting assertion of deliberative-process privilege because "the notion that police departments should be able to completely shield their internal affairs investigatory process from the public offends basic notions of openness and public confidence in our system of justice"); Michael Kennedy, *Escaping the Fishbowl: A Proposal to Fortify the Deliberative Process Privilege*, 99 Nw. U. L. Rev. 1769, 1777-78 (Summer 2005) ("When the integrity of the deliberative process itself is an issue in the case, the deliberative process privilege cannot be invoked to foreclose inquiry into those deliberations. In such cases, courts do not even apply the balancing test, but simply hold that the deliberative process privilege does not 'enter the picture at all.' Similarly, courts have stated that the deliberative process privilege is negated when the party seeking discovery has provided 'reason to believe that governmental misconduct will be uncovered by the requested material.'"); *Alexander v. FBI*, 186 F.R.D. 170, 177-78 (D.D.C. 1999) ("The Court of Appeals has made clear that the deliberate process privilege 'disappears altogether when there is *any* reason to believe government misconduct occurred'… Thus, if there is 'any reason' to believe the information sought may shed light on government misconduct, public policy (as embodied by the law) demands that the misconduct not be shielded merely because it happens to be predecisional and deliberative. Therefore, the Department of Defense's argument that the court must undertake a balancing of the plaintiffs' versus the public's interest in terms of protecting alleged misconduct must be rejected.") (emphasis original) (quoting *In re Sealed Case*, 121 F.3d at 746); *Bank of Dearborn v. Saxon*, 244 F. Supp. 394, 402 (E.D. Mich. 1965) (rejecting deliberative-process privilege where misconduct is alleged because "the real public interest under such circumstances is not the agency's interest in its administration but the citizen's interest in due process"); *Dominion Cogen D.C., Inc. v. District of Columbia*, 878 F. Supp. 258, 268 (D.D.C. 1995) ("Furthermore, '[a]n exception to the general thought-process rule is made where there are allegations of misconduct or

Respectfully submitted,

s/ Melody Brannon
MELODY BRANNON #17612
Federal Public Defender
for the District of Kansas
117 SW 6th Avenue, Suite 200
Topeka, Kansas 66603-3840
Phone: 785-232-9828
Fax: 785-232-9886
E-mail Address: Melody_Brannon@fd.org

---

misbehavior.'") (citing *Dept. of Economic Development v. Arthur Anderson*, 139
F.R.D. 594, 596 (S.D.N.Y.1991) for proposition that deliberative-process privilege is
"inapplicable where deliberations of government personnel are directly in issue").

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on January 17, 2018, I electronically filed the foregoing with the clerk of the court by using the CM/ECF system which will send a notice of electronic filing to all interested parties.


s/ Melody Brannon
Melody Brannon