# Kansas Federal Public Defender
www.ks.fd.org



*Federal Public Defender Melody Brannon*
*First Assistant Federal Public Defender Kirk Redmond*

Topeka Division Attorneys
Branden A. Bell
Rich Federico
Carl Folsom
David Magariel
Andrew McGowan
Paige A. Nichols

March 15, 2018

<u>*Delivered via email*</u>
Mr. Steven Clymer
Assistant U.S. Attorney
Northern District of New York
steven.d.clymer@usdoj.gov

    Re:   *Touhy* request for *United States v. Lorenzo Black, et. al.*,
          16-cr-20032-JAR (D. Kan.)

Dear Mr. Clymer:

    On December 14 and 19, 2017, we wrote a *Touhy* request to your office requesting certain testimony and documents. This letter serves as a renewed *Touhy* request, pursuant to 28 C.F.R. §§ 16.21(a) and (b), requesting persons listed herein, employed by the United States Attorney's Office for the District of Kansas (USAO), to appear and testify at the evidentiary hearing on April 4, 2018, or as required thereafter until completion of their testimony.

    As you know, the Court set the hearing to discuss the Special Master's findings concerning the government's failure to comply with the Phase III investigation and other matters raised concerning the Phase III investigation. The Phase III investigation was ordered specifically to investigate the conduct of the USAO and its agents. It is in this context that the witnesses are requested to appear and testify.

    Each person listed herein is an "employee" of the Department of Justice, and the USAO in particular, as defined under 28 C.F.R. § 16.21(b) and USAM § 1-611. A summary of the testimony sought from each witness is also provided, as required under 28 C.F.R. § 16.23(c), generally in summaries of witness testimony filed as Exhibits 5A-5G to your Motion to Terminate "Phase III" of the Special Master's investigation, D.E. 336, as well as the following:

Kansas City Division
500 State Ave, Room 201
Kansas City, Kansas 66101
Tel 913.551.6712
Fax 913.551.6562

Topeka Division
117 SW 6th Ave, Ste 200
Topeka, Kansas 66603
Tel 785.232.9828
Fax 785.232.9886

Wichita Division
301 N Main, Ste 850
Wichita, Kansas 67202
Tel 316.269.6445
Fax 316.269.6175

   1. **Tom Beall** – Topeka, Kansas

Mr. Beall is currently the First Assistant United States Attorney for the District of Kansas. During much of this litigation, Mr. Beall served as Acting United States Attorney for the District of Kansas. He has personal knowledge and can testify about the following topics:

   (1) His office policy, procedures, and practice concerning the issuance of subpoenas to obtain, or that would include, attorney-client communications, to include production of any written policy;

   (2) His office policy, procedures, and practice on requesting, obtaining, and reviewing any material that contains attorney-client communications, to include production of any written policy;

   (3) Whether he knows of any attorney, agent, or employee of the USAO accessed, or had access to, defense protected attorney-client communications;

   (4) When and how he became aware that at least one of his prosecutors, former SAUSA Erin Tomasic, listened to and/or watched recordings of protected attorney-client communications;

   (5) What remedial action, if any, he took or had taken to ensure defense attorney-client communications were not further being obtained and reviewed by his office;

   (6) What remedial action, if any, he took or had taken regarding misconduct by SAUSA Tomasic or any other USAO prosecutor or employee;

   (7) His decision not to "correct the record" regarding SAUSA Tomasic entering into Chief Judge Robinson's chambers after-hours, as detailed during a hearing on September 7, 2016;

   (8) The total number and names of cases in which the USAO notified opposing counsel, the court, and/or filed a notice of record correction to correct prior statements and representations of USAO prosecutors relating to the USAO obtaining, possession, using, disseminating, listening, or viewing protected attorney-client communications;

   (9) The nature of the "conflict" in the USAO's representation of the government in this case, as evidenced by communications with the Special Master;

(10) Any and all communications with Main Justice concerning the Phase III investigation, the USAO's conflict in continuing to represent the government in this investigation, and guidance received from Main Justice concerning the conflict; and

(11) The government's decision to limit or cease cooperation with the Special Master's Phase III investigation.

(12) Whether he has an opinion on, or knows the reputation of, any other member of the office who has testified or given information to the court in this case regarding their character for honesty.

### 2. **Emily Metzger** – Wichita, Kansas

During much of the litigation, Ms. Metzger was the First Assistant for the USAO. She has personal knowledge and can testify about the following topics:

(1) Her role and duties as the District Litigation Hold Coordinator for the USAO;

(2) The USAO policy and practice concerning the issuance of a litigation hold in this case;

(3) When and how the litigation hold was issued to the USAO responsive to the Special Master's investigation;

(4) The number of USAO employees who responded they were likely to have or might have information responsive to the litigation hold;

(5) The type and volume of information in the possession of the USAO responsive to the litigation hold; and

(6) Discussions and the decision to instruct SAUSA Tomasic to enter Chief Judge Robinson's chambers after-hours to deliver materials related to this case, as detailed at the September 7, 2016 hearing.

(7) The communications she had with AUSA Catania or on about December 27, 2017 and January 2, 2018, regarding what the interpreter assigned to *Herrera-Zamora* told AUSA Catania;

(8) The interview she conducted with the interpreter assigned to *Herrera-Zamora* on or about January 4, 2018;

(9) Whether she has an opinion on, or knows the reputation of, any other member of the office who has testified or given information to the court in this case regarding their character for honesty.

Additionally, we would ask that AUSA Catania provide a copy of the email she sent to AUSA Metzger on or about December 27, 2017, concerning AUSA Catania's discussion with the interpreter; as well as any email sent on or about January 2, 2018, concerning that same topic.

### 3. Debra Barnett – Wichita, Kansas

Ms. Barnett is an Assistant United States Attorney for the District of Kansas. During much of this litigation, she served as the Criminal Chief for the USAO. She has personal knowledge and can testify about the following topics:

(1) The USAO policy and practice concerning the issuance of subpoenas to obtain, or that would include, attorney-client protected communications;

(2) Her knowledge concerning any subpoenas sought and issued by her office to CCA-Leavenworth to obtain video recordings made from surveillance video cameras within CCA-Leavenworth, including whether she approved them before they were served;

(3) Her knowledge concerning any subpoenas sought and issued by her office to CCA-Leavenworth to obtain recordings of phone calls made by detainees and their lawyers, and whether she approved them before they were served;

(4) The policy and practice of the USAO to use a "filter" or "taint" team to screen for protected attorney-client communication;

(5) The policy and practice of the USAO to protect attorney-client communications once the "filter" or "taint" team discovers the government obtained attorney-client communications as part of its investigation, including how the USAO ensures such communications are not distributed or produced to third-parties in discovery;

(6) The policy and practice to determine what other agencies receive grand jury materials such as video recordings or phone calls made at or by CCA-Leavenworth;

(7) What remedial action, if any, she took or had taken to ensure defense attorney-client communications were not being obtained or reviewed by her office;

(8) What remedial action, if any, she took or had taken regarding misconduct by SAUSA Tomasic, AUSA Kim Flannigan, or any other prosecutor at the USAO;

(9) Her decision to have a representative from the U.S. Marshals Service escort SAUSA Tomasic to Chief Judge Robinson's chambers after-hours to deliver materials related to this case;

(10) The content of discussions concerning the obligations of the USAO to provide notification to the Court and the defense concerning the misconduct of attorneys at the USAO and the basis for the decision reached; and

(11) The content of discussions and decision to file notice of record corrections in this case or any other case in the District subsequent to the Special Master being appointed.

(12) Whether she has an opinion on, or knows the reputation of, any other member of the office who has testified or given information to the court in this case regarding their character for honesty.

### 4. **Kim Flannigan** – Kansas City, Kansas

Ms. Flannigan is an AUSA. She has personal knowledge and can testify about the following topics:

(1) That in 2016 her office obtained video recordings from CCA-Leavenworth that included video from attorney visitation rooms;

(2) Communications by or between herself, SAUSA Tomasic, and Jackie Rokusek in August 2016 relating to the USAO's assertions that Ms. Rokusek had a conflict with her client, Richard Dertinger, due to its accusation that Ms. Rokusek provided to him information from another case;

(3) Any and all efforts taken by USAO to corroborate the statements of "cooperators" that CCA-Leavenworth inmate Dertinger had told other inmates that Ms. Rokusek provided him discovery from another case that detailed an ongoing investigation of the smuggling of controlled substances into and within CCA-Leavenworth;

(4) The content of discussions concerning the obligations of the USAO to protect defense attorney-client communications and the basis for the decision reached;

(5) The decision and basis in April 2016 to file a show cause motion against a defense attorney in *United States v. Huff* (16-20067-09-CM);

(6) The content of discussions concerning the obligations of the USAO to provide notification to the Court and the defense concerning the conduct of attorneys at the USAO relating to CCA-Leavenworth video recordings and the basis for the decision reached;

(7) Any and all advice she gave to SAUSA Tomasic and AUSA David Zabel to use a filter team in *United States v. Herrera-Zamora* (14-20049-01-CM), including the basis, reasoning, and procedures she used to render this advice;

(8) Her expectations for what a "filter team" would do and how that would limit the access of SAUSA Tomasic and AUSA Zabel to case information that was protected attorney-client communications;

(9) When she became aware that SAUSA Tomasic purposefully and intentionally listened to the recordings of attorney-client phone calls made from CCA-Leavenworth; and

(10) The content of discussions concerning the obligations of the USAO to provide notification to the Court and the defense concerning the conduct of attorneys at the USAO relating to CCA-Leavenworth inmate phone calls with defense attorneys, and the basis for the decision reached.

(11) Whether she has an opinion on, or knows the reputation of, any other member of the office who has testified or given information to the court in this case regarding their character for honesty.

**5. Tris Hunt** – Kansas City, Kansas

Mr. Hunt is an AUSA. He has personal knowledge and can testify about the following topics:

(1) When, why, and the case names wherein he was appointed to a filter team;

(2) What, if any, communications he reviewed as part of the filter team in this case or any other case since this case was first charged;

(3) The policy and procedures used by a filter team at the USAO;

(4) Communications with US Attorney Beall regarding his duty of "candor" regarding allegations that SAUSA Tomasic entered Chief Judge Robinson's chambers after-hours, as discussed at the September 7, 2016 hearing;

(5) The placement of a manila folder in the "inbox" in SAUSA Tomasic's office in October 2016 alleged by SAUSA Tomasic to have contained recordings of attorney-client telephone calls made from CCA-Leavenworth;

(6) His awareness of any interpreter involved in the translation of phone calls that included attorney-client communications and, if so, who, when, and what case;

(7) The contents and discussion during the meeting on February 21, 2017 with members of the USAO to discuss a response to a defense motions alleging the USAO had obtained recordings of protected attorney-client communications in *United States v. Herrera-Zamora* (14-20049-01-CM); and

(8) His actions on or about August 5, 2016 to secure the protected attorney-client communications obtained in this case that were in the possession of the USAO.

(9) Whether he has an opinion on, or knows the reputation of, any other member of the office who has testified or given information to the court in this case regarding their character for honesty.

**6. Christopher Oakley** – Kansas City, Kansas

Mr. Oakley is an AUSA. He has personal knowledge and can testify about the following topics:

(1) That in 2016 his office obtained video recordings from CCA-Leavenworth as that included video from attorney visitation rooms;

(2) His participation in the law enforcement "raid" at CCA-Leavenworth in April 2016, including his knowledge of the audio/video surveillance system at the facility;

(3) The planned undercover operation in Spring 2016 wherein he, SAUSA Tomasic, and law enforcement agents sought approval to use a confidential human source and/or informant to pose as a defense paralegal and visit inmate(s) within CCA-Leavenworth attorney visitation room(s) to record communications and conduct related to an investigation into drug smuggling into and within CCA-Leavenworth;

(4) The content of discussions concerning the obligations of the USAO to protect defense attorney-client communications and the basis for the decision reached; and

(5) The content of discussions concerning the obligations of the USAO to provide notification to the Court and the defense concerning the conduct of attorneys at the

USAO relating to CCA-Leavenworth video recordings and the basis for the decision reached.

(6) His awareness of Jeff Stokes's review of the CCA video, including any restrictions that were placed on that review;

(7) His awareness of SAUSA Tomasic and AUSA Flannigan's decision to allow Ms. Rokusek to view the video;

(8) When he became aware that the CCA video contained depictions of attorney-client meetings, how he became aware of it, and what steps he took after gaining that knowledge.

(9) Whether he has an opinion on, or knows the reputation of, any other member of the office who has testified or given information to the court in this case regarding their character for honesty.

**7. Scott Rask** – Kansas City, Kansas

Mr. Rask is an AUSA. He has personal knowledge and can testify about the following topics:

(1) His conduct and circumstances in August 2016 to secure hard drives/DVRs obtained by the USAO from CCA-Leavenworth that included video recordings from surveillance video cameras;

(2) Whether he has access or authority to access the USAO vault at Kansas City;

(3) His awareness and actions concerning his knowledge that in January 2017 an interpreter used by the USAO recognized a family voice in attorney-client calls made from CCA-Leavenworth and notified attorneys in the office;

(4) His awareness that prosecutors in his office obtained attorney-client phone calls made from CCA-Leavenworth and what, if any, action he took to investigate whether these calls were listened to or reviewed by any member of his office;

(5) His meeting with SAUSA Tomasic and AUSA Zabel on May 10, 2017 wherein he learned that SAUSA Tomasic had listened to protected attorney-client communications in *United States v. Herrera-Zamora* (14-20049-01-CM); and

(6) Any and all meetings, discussions, and communications following the May 10, 2017 meeting with SAUSA Tomasic in which he and the USAO analyzed what

remedial actions, if any, were necessary, to include correcting the record of statements made by SAUSA Tomasic in this case and/or any other cases.

(7) The interview he and AUSA Metzger conducted with the interpreter in *Herrera-Zamora* on or about January 4, 2018.

(8) The results of the office's investigation into SAUSA Tomasic's conduct in *Herrera-Zamora* and *Huff*.

(9) Whether he has an opinion on, or knows the reputation of, any other member of the office who has testified or given information to the court in this case regarding their character for honesty.

**8. Erin Tomasic**[1] – Formerly Kansas City, Kansas

Ms. Tomasic is a former employee of the USAO as an appointed SAUSA. She has personal knowledge and can testify about the following topics:

(1) Her duties as the lead prosecuting attorney for this case;

(2) Her duties as the lead prosecuting attorney in *United States v. Herrera-Zamora* (14-20049-01-CM), along with AUSA Zabel;

(3) The reason and purpose for the USAO to issue subpoenas to CCA-Leavenworth to obtain video recordings taken from surveillance cameras and audio recordings of telephone calls by and between inmates at CCA-Leavenworth;

(4) The planned undercover operation in Spring 2016 wherein she, AUSA Oakley, and law enforcement agents sought approval to use a confidential human source and/or informant to pose as a defense paralegal and visit inmate(s) within CCA-Leavenworth attorney visitation room(s) to record communications and conduct related to an investigation into drug smuggling into and within CCA-Leavenworth;

---

[1] The FPD does not concede that *Touhy* regulations apply to a former USAO employee. We include Ms. Tomasic within this request prophylactically should the government take the position that her testimony, which will cover topics and conduct during the time Ms. Tomasic was an employee and/or in furtherance of the performance of her duties as a SAUSA at the USAO, remains subject to *Touhy* regulations and requirements.

    (5) Her presence and purpose at CCA-Leavenworth during the law enforcement "raid" in April 2016, to include her knowledge of the video surveillance and security system utilized by CCA;

    (6) Who drafted and reviewed the subpoenas to CCA-Leavenworth before they were sought, filed, and/or served and why the language did not specifically exclude attorney-client phone calls or meetings;

    (7) The advice she sought about whether to use a filter team in this case or any case;

    (8) Her knowledge and expectations for what a "filter team" would do;

    (9) Her policy and practice in disseminating inmate phone calls in discovery;

    (10) Communications by or between herself, AUSA Flannigan, and Jackie Rokusek in August 2016 relating to the USAO's assertion that Ms. Rokusek had a conflict with her client, Richard Dertinger, due to its accusation that Ms. Rokusek provided him information from another case;

    (11) Any and all efforts taken by USAO to corroborate the statements of "cooperators" that CCA-Leavenworth inmate Dertinger had told other inmates that Ms. Rokusek provided him discovery from another case that detailed an ongoing investigation of the smuggling of controlled substances into and within CCA-Leavenworth;

    (12) The content of discussions concerning the obligations of the USAO to protect defense attorney-client communications and the basis for the decision reached;

    (13) Whether she had access to the USAO vault in Kansas City and what actions she took to physically secure any items, materials, or information that included protected attorney-client communications;

    (14) The decision and basis in April 2016 to file a show cause motion against a defense attorney in *United States v. Huff* (16-20067-09-CM);

    (15) Her conduct and circumstances in entering Chief Judge Robinson's chambers to deliver materials related to this case, as discussed in the September 7, 2016 hearing;

    (16) When, where, how, why, and in what case she listened to recordings of attorney-client phone calls;

(17) When, where, and why she disclosed her conduct in listening to attorney-client communications to persons in her office;

(18) The contents and discussion during the meeting on February 21, 2017 with members of the USAO to discuss a response to a defense motions alleging the USAO had obtained and listened to recordings of protected attorney-client communications;

(19) Her conversation with defense attorneys in February 2017 wherein she and AUSA Zabel demanded the defense withdraw the motions, including her basis for their request;

(20) Any and all meetings, discussions, and communications in which she and the USAO analyzed what remedial actions, if any, were necessary; and

(21) The basis for and circumstances surrounding her termination from the USAO, to include any and all remedial actions taken by her subsequent to her termination.

(22) Any conversations she may have had with, including instructions she or others gave, to the interpreter assigned to listen to inmate calls in *Herrera-Zamora*, and the circumstances under which the interpreter relayed any results of that interpretation.

(23) Whether she has an opinion on, or knows the reputation of, any other member of the office who has testified or given information to the court in this case regarding their character for honesty.

**9. Lanny Welch** – Wichita, Kansas

Mr. Welch is an AUSA. He has personal knowledge and can testify about the following topics:

(1) He served as the USAO's Professional Responsibility Officer in 2016;

(2) He was contacted by SAUSA Tomasic in 2016 about what to do about recordings obtained by the USAO of attorney-client telephone calls made from CCA-Leavenworth;

(3) The advice he gave to SAUSA Tomasic to use a filter team, including the basis, reasoning, and procedures he used to render this advice;

(4) His expectations for what a "filter team" would do and how that would limit the access of prosecutors to case information that was protected attorney-client communications;

(5) Whether the conduct of SUASA Tomasic and others was consistent with the advice he provided; and

(6) Whether any remedial actions were taken within the USAO based upon the conduct of SAUSA Tomasic and others relating to this case.

**10. David Zabel** – Kansas City, Kansas

Mr. Zabel is an AUSA. He has personal knowledge and can testify about the following topics:

(1) He was the prosecuting attorney for *United States v. Herrera-Zamora* (14-20049-01-CM) along with SAUSA Tomasic;

(2) The reason and purpose for the USAO to obtain recordings of attorney-client telephone calls made from CCA-Leavenworth;

(3) How the recordings of attorney-client phone calls made from CCA-Leavenworth were obtained;

(4) Whether he reviewed any subpoenas before they were sought, drafted, or issued to determine whether any efforts were made to ensure they did not return recordings of attorney-client protected communication;

(5) The advice he gave to SAUSA Tomasic to use a filter team, including the basis, reasoning, and procedures he used to render this advice;

(6) His expectations for what a "filter team" would do and how that would limit the access of prosecutors to case information that was protected attorney-client communications;

(7) His conversations with defense lawyers in February 2017 regarding whether the prosecution team had listened to any calls between attorneys and their clients, and the basis for his assurance to defense lawyers that they had not;

(8) His discussions with SAUSA Tomasic following his conversation with defense lawyers to confirm or deny whether she had listened to any calls;

(9) The contents and discussion during the meeting on February 21, 2017 with members of the USAO to discuss a response to a defense motions alleging the USAO had obtained recordings of protected attorney-client communications;

(10) His conversation with defense lawyers on February 22, 2017 wherein he demanded the defense withdraw the motions, including his basis for the request;

(11) His meeting with SAUSA Tomasic and AUSA Rask on May 10, 2017 wherein he learned that SAUSA Tomasic had listened to protected attorney-client communications;

(12) Any and all meetings, discussions, and communications following the May 10, 2017 meeting with SAUSA Tomasic in which he and the USAO analyzed what remedial actions, if any, were necessary;

(13) The decision to file the Notice of Record Correction on June 19, 2017, including the explanation for the delay between the revelation by SAUSA Tomasc on May 10 and this filing; and

(14) His written advice to US Attorney Beall regarding his "candor" obligations to correct the record regarding allegations that SAUSA Tomasic entered Chief Judge Robinson's chambers after-hours to deliver materials related to this case, as discussed at the September 7, 2016 hearing.

(15) Any discussion he personally participated in or subsequently became aware of regarding the instructions given to the interpreter assigned to listen to inmate calls *Herrera-Zamora.*

(16) Whether he has an opinion on, or knows the reputation of, any other member of the office who has testified or given information to the court in this case regarding their character for honesty.

    **11.**    **Pauletta Boyd** – Kansas City, Kansas

Ms. Boyd is a Litigation Support Specialist. She has personal knowledge and can testify to the following:

(1) The receipt of copies from the U.S. Secret Service of hard drives/DVRs obtained from CCA-Leavenworth in June 2016;

(2) The hardware and software needed to view content from the hard drives/DVRs obtained by the USAO from CCA-Leavenworth;

(3) The creation or receipt of an index of the video recordings from CCA-Leavenworth;

(4) How the hard drives/DVRs were secured at the USAO prior to August 5, 2016;

(5) Who, when, how, and why the hard drives/DVRs were viewed;

(6) How the hard drives/DVRs were secured at the USAO subsequent to August 5, 2016;

(7) Who had access to her office when she was not there; and

(8) The computer "refresh" that occurred at the USAO and the "wiping" of the stand-alone computer that included the software to view the recordings on the hard drive/DVRs.

**12.     Dave Steeby** – Kansas City, Kansas

Mr. Steeby is a Systems Manager. He has personal knowledge and can testify to the following:

(1) The computer "refresh" that occurred at the USAO and the "wiping" of the stand-alone computer that included the software to view the recordings on the hard drive/DVRs;

(2) How a hard drive is "wiped" clean at the USAO and whether forensic software can recover any relevant data;

(3) Any and all IT efforts to preserve electronic data once the litigation hold was issued regarding this case;

(4) The process to search and organize relevant electronic information related to this case as it has been preserved at the USAO due to the litigation hold;

(5) Instructions he received to cooperate with the Special Master, and from whom; and

(6) His knowledge whether any other information subject to the litigation hold was not preserved.

**12.   Sheri Catania** – Kansas City, Kansas

Ms. Catania is an AUSA. She has personal knowledge about, and can testify to, the following topics:

(1) Her knowledge that CCA often records attorney-client phone calls;

(2) Her knowledge about the office's policy, or lack thereof, governing requests to CCA for inmates' recorded telephone calls;

(3) Her knowledge about SAUSA Tomasic's decision to listen to recorded attorney-client telephone calls;

(4) Her knowledge about SAUSA Tomasic's decision to obtain video from CCA depicting meetings between attorneys and clients;

(5) Her knowledge about SAUSA Tomasic's decision to view, or have others view, the CCA video depicting meetings between attorneys and clients;

(6)  Her knowledge about whether other members of the office knew of SAUSA Tomasic's decision to listen to attorney-client telephone calls at the time SAUSA Tomasic listened to the calls or shortly thereafter;

(7) The discussion with an interpreter, on or about December 27, 2017, regarding SAUSA Tomasic's instructions to the interpreter about listening to recorded inmate calls;

(8) The communication she had with AUSA Metzger, on or about December 27, 2017, regarding AUSA Catania's discussion with the interpreter;

(9) The communication she had with AUSA Metzger, on or about January 2, 2018, regarding AUSA Catania's discussion with the interpreter;

(10)   Whether she has an opinion on, or knows the reputation of, any other member of the office who has testified or given information to the court in this case regarding their character for honesty.

Additionally, we would ask that AUSA Catania provide a copy of the email she sent to AUSA Metzger on or about December 27, 2017, concerning AUSA Catania's discussion with the interpreter; as well as any email sent on or about January 2, 2018, concerning that same topic.

**Conclusion**

This information meets all the criteria for disclosures under 28 C.F.R. § 16.26(a). It is appropriate under the rules of procedure governing this case – the Federal Rules of Criminal Procedure – as the testimony and documents are material to preparing a defense under Rule 16(a)(1)(E). There is not any statutory privilege that applies.

None of the criteria for non-disclosure delineated under § 16.26(b) applies here. The disclosure would not violate a statute or specific regulation. The information sought is not classified, nor would it reveal any confidential source. Finally, the records sought are not law-enforcement records or trade secrets.

We request that all witnesses appear in person to provide testimony. A motion for subpoenas is being filed contemporaneously with the issuance of this letter. We ask that all witnesses gather any documents that would assist them in providing their testimony and provide those prior to the date of hearing. This specifically includes any statements, of any kind, made these witnesses about these matters.

Finally, please let me know if you would be willing to accept service of the subpoenas for these employees, or if you would prefer I serve them each personally.

Sincerely,

*s/ Melody Brannon*
Melody Brannon
Federal Public Defender

Cc:
David Cohen
Special Master
david@specialmaster.biz

Kirk Redmond
First Assistant Federal Public Defender
Kirk_Redmond@fd.org

Stephen McAllister
U.S. Attorney
Stephen.Mcallister@usdoj.gov

Branden Bell
Assistant Federal Public Defender
Branden_Bell@fd.org

Tom Beall
First Assistant U.S. Attorney
Thomas.Beall@usdoj.gov

Rich Federico
Staff Attorney (R&W)
Rich_Federico@fd.org

Emily Metzger
Assistant U.S. Attorney
Emily.Metzger@usdoj.gov

Debra Barnett
Assistant U.S. Attorney
Debra.Barnett@usdoj.gov