# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | **Case No. 16-CR-20032-JAR** |
| Plaintiff, ) | |
| ) | |
| v. ) | **Government's Response to Motion to** |
| ) | **Reconvene Evidentiary Hearing** |
| LORENZO BLACK, ) | |
| KARL CARTER, ) | |
| ANTHON AIONO, ) | |
| ALICIA TACKETT, ) | |
| CATHERINE ROWLETTE, and ) | |
| DAVID BISHOP, ) | |
| ) | |
| Defendants. ) | |

The United States of America, by and through its counsel of record, Assistant United States Attorney Steven Clymer, appointed as Special Attorney pursuant to 28 U.S.C. § 515 to represent the United States in connection with Phase III of the Special Master Investigation, hereby responds to the Federal Public Defender's "Motion to Reconvene Evidentiary Hearing."  [Docket #536].

As explained below, developments both during and since the hearing on May 15-16, 2018, cast doubt on whether further testimony is necessary.  In short, the government has either agreed or stated that it has no opposition to the relief sought by every litigant who has standing in this case (the *Black* defendants and the Rule 41(g) movants).   Further, this Court has now provided representation by the Federal Public Defender for any previously-sentenced defendant who believes that his Sixth Amendment rights were violated, and a means by which the FPD can investigate such alleged violations.

If the Court is nonetheless inclined to reconvene the evidentiary hearing, the government respectfully requests that further inquiry be limited to whether any government official improperly reviewed and used attorney-client privileged communications of one or more litigants with standing in this case and whether such was prejudicial. If the hearing is reconvened, this will focus the hearing and avoid unnecessary expenditure of the Court's time.

## A.    Background

On February 26, 2018, the Tenth Circuit ordered that the evidentiary hearing be limited to "defendants before the court in *United States v. Black*, No. 16-20032-JAR, and to other parties in *Black* who have filed Rule 41(g) motions in that proceeding." *In re United States*, No. 1803007 (10th Cir. 2018). On that same day, the United States Attorney's Office ["USAO"] notified this Court that it "does not oppose the Court granting the movants the relief provided in Rule 41(g) by delivering any such recordings to the movants, as sought by their motions, through their respective counsel." (Docket #399).

On May 16, 2018, the USAO moved to dismiss all charges against defendants Karl Carter and David Bishop with prejudice. TR:324-25; Docket #478.[1] The Court granted the motion as to Bishop and held the motion as to Carter in abeyance. TR:331, 335-36; Docket #478.

Having unconditionally provided this dispositive retrospective relief to the remaining defendants in *Black* and to the Rule 41(g) movants,[2] the USAO turned to prospective relief. The USAO negotiated and agreed to a proposed District-wide standing order with the Federal Public Defender that, among other things, limited the government's access to recordings of inmates'

---

[1] References to the transcript from the May 15-16, 2018 hearing are preceded by "TR." The references are to the version of the transcript that includes sealed sidebar conferences. This notice will not describe the specifics of the sidebar conferences or quote from them.

[2] The others indicted in *Black* had all been convicted by guilty plea and are not involved in this litigation.

outgoing telephone calls and was designed to ensure that there would be a record available to defense counsel of the government's requests for such calls, as well as multiple safeguards to prevent the government from obtaining or listening to recordings of inmate telephone calls to counsel.[3]

The Court has taken significant additional steps designed to ensure both prospective and retrospective relief.  On June 7, 2018, it granted an unopposed motion by the Federal Public Defender and ordered that "[t]he United States Attorney's Office for the District of Kansas and its agents are prohibited, effective immediately, from requesting or accessing recorded calls between the Federal Public Defender and clients through CoreCivic Leavenworth Detention Center; Securus Technologies, Inc.; Praeses, LLC; or any third party that may have access to the protected communications described in the Federal Public Defender's motion."  Docket #490.  On June 14, 2018, the Court granted an unopposed motion by the Federal Public Defender and directed "[t]he Special Master . . . to release to the FPD (1) copies of all records in his possession of legal or professional visitations to inmates at the CoreCivic (formerly "CCA") Leavenworth Detention Facility between February 20, 2016 and May 16, 2016, and (2) copies in his possession of written requests by the United States Attorney's Office or the United States Marshals Service to CoreCivic for recorded phone calls."  Docket #493.  This was done because "the requested materials may assist the FPD in identifying defendants who may have viable claims related to issues in this case."  Docket #493.  Further, the Court granted unopposed FPD motions for additional subpoenas *duces*

---

[3] The United States Marshal's Service ("USMS") has objections to aspects of the standing order proposed by the Federal Public Defender.  The USAO has agreed only to those features of the proposed order applicable to its own conduct.  The government is willing to continue to work with the Federal Public Defender to resolve the objections of the USMS.

*tecum* for records from CCA/CoreCivic, Docket #503; and Securus Technologies, Docket #524; #525.

Further, on July 17, 2018, the Court issued Standing Order 18-3 based on "the possibility of Sixth Amendment violations in this District."[4]  The order "appoints the Federal Public Defender to represent any defendant from the District of Kansas who may have a post-conviction Sixth Amendment claim based on the recording of in-person attorney-client meetings or attorney-client phone calls by any holding facility housing federal detainees within this District."

USAO officials and the Federal Public Defender also discussed retrospective relief for previously-sentenced defendants with no standing in *Black* whose meetings with or outgoing telephone calls to counsel were video- or audio-recorded by the Leavenworth detention facility and later produced to the USAO.  The parties discussed sentencing reductions for some such defendants (who had yet to be identified) without regard to whether their Sixth Amendment rights were violated or they were prejudiced, and so notified the Court on July 17, 2018.  But, resolution of this magnitude required further consultation and coordination with senior leadership in the Department of Justice.  Following that consultation, by letter of July 27, 2018, the Deputy Attorney General advised the Special Master and parties that:

> the Department of Justice cannot approve blanket sentencing reductions absent evidence of particularized harm. Criminal sentences must be based on an individualized evaluation of the facts relevant to each defendant. If there is no evidence of a Sixth Amendment violation that prejudiced a defendant's criminal case, there is no basis to revisit that defendant's sentence.

---

[4] The FPD motion to reconvene refers to having presented "evidence on the scope and extent of the Sixth Amendment violations caused by the United States Attorney's Office."  Docket #536. No such proof has been adduced.  Accordingly, Standing Order 18-3 correctly refers to only the "possibility" of Sixth Amendment violations.  Similarly, there is no evidentiary support for the assertion in the FPD's motion that the USAO possessed "recorded, *privileged*, attorney-client communications." (Emphasis added).

The Deputy Attorney General's letter left untouched the other prospective and retrospective relief to which the USAO agreed or did not oppose.[5] The letter explained that "[i]t is important to the Department of Justice that we identify any defendant who was harmed by an unwarranted invasion of attorney-client privilege, and that we ensure an appropriate remedy." Accordingly, the Deputy Attorney General expressed the Department's commitment "to cooperate with [the Special Master] in pursuing any credible evidence of misconduct" and explained that "if the Court finds that there is a basis to doubt the integrity of particular Department employees, we have no objection to the employee responding to questions focused on the issue of whether he or she improperly obtained, watched or listened to, and used privileged communications." The letter also described internal mechanisms at the Department for addressing allegations of government misconduct, imposing discipline or corrective action when appropriate, notifying the Court, and producing exculpatory evidence to criminal defendants.

After receipt of this letter, the FPD moved to reconvene the evidentiary hearing,

## B.    Argument

### 1.    There is No Government Opposition to the Relief Requested by All Parties with Standing; Therefore the Court Can Order Such Relief without Further Testimony.

The only *Black* defendant who arguably has an extant request for relief is Karl Carter, who filed a motion to dismiss based on claims of Fifth and Sixth Amendment violations arising from

---

[5] The Federal Public Defender appears to have misinterpreted the Deputy Attorney General's letter to "unilaterally reverse" all "agreements" between the USAO and the FPD. Docket #536 at p. 2. In fact, the letter favorably describes the USAO motion to dismiss charges as to Carter and Bishop, its non-opposition to the return of property under Fed. R. Crim. P. 41(g), its role in the development of "a proposed standing order to establish best practices in the handling of attorney-client recordings in the future," and a commitment to "identify[ing] any defendant who was harmed by an unwarranted invasion of attorney-client privilege, and that we ensure an appropriate remedy." The letter does not "reverse" anything other than the possibility of reductions in judicially-imposed sentences of criminal defendants without proof that each is entitled to such relief.

the recording of his meetings with and telephone calls to counsel while he was incarcerated at the Leavenworth detention facility.  Docket #333.  But, as noted above, the government itself has moved for the very relief that Carter sought in his motion – dismissal of the charges against him. Accordingly, the Court can and should grant Carter relief without additional testimony or other evidence.

A successful Rule 41(g) movant is entitled to a return of the property at issue.  Fed. R. Crim. P. 41(g) ("If [the court] grants the motion, the court must return the property to the movant, but may impose reasonable conditions to protect access to the property and its use in later proceedings.").  Here, the property at issue – audio and video recordings of the movants' telephone calls to and meetings with counsel at the Leavenworth detention facility – have been impounded by the Court and the government does not oppose their return to the movants.  Docket #399. Accordingly, no evidence is necessary for the Court to grant this relief.

To be sure, the FPD's "show cause" motion, Docket #301, remains pending.  But, even if read generously, this motion relies on only two events in support of its request for contempt citation against the government, and neither event requires evidentiary development.

First, the motion argues that the government's reliance on the *Touhy* regulations when responding to the Special Master's request for information merits a contempt citation.[6]  *Id*. at pp. 1-3.  But, the underlying facts are not in dispute.  Thus no testimony or evidence is necessary to rule on the motion.  And, it appears that there is no intent for any party to offer any evidence bearing on this issue.  Indeed, *none* of the proposed questioning by the FPD or the Special Master relates

---

[6] The Special Master adopted a different position, suggesting that costs be shifted to the government consistent with this Court's Phase III Order, Docket #253.  *See* Docket #298 at pp. 9-10.

to this matter.  *See* Docket #466-1 at pp. 1-32.  Similarly, none of the hearing exhibits relate to this matter.

Second, the show cause motion alludes to the erasure of data on a USAO computer as a ground for a contempt citation.  *Id*. at pp. 4-5.[7]  But, evidence that the FPD introduced at the May 15-16, 2018 hearing, specifically FPD Exhibit 552, establishes that a prescheduled "upgrade-in-place" to the relevant computer's software, which overwrote existing material on the hard drive, occurred *before* the district court's preservation order.  *Id*. at 12-14.  There is no contrary evidence.

## 2. The Court Has Provided Representation and Means of Investigation for Sentenced Defendants Who Believe That Their Sixth Amendment Rights Have Been Violated.

Continuation of the evidentiary hearing is not necessary to investigate whether already-sentenced defendants have suffered Sixth Amendment violations through prejudicial intrusion into their attorney-client communications.  The Court has appointed the FPD to represent these defendants and provided the FPD the means by which it can obtain information from the Special Master, the detention facility, and the telephone service provider to identify those whose meetings with and/or telephone calls to counsel were recorded and later produced to the USAO.  The government is willing to discuss with the Special Master and the FPD the possibility of conducting an appropriate inquiry as to any defendant so identified to determine if there is evidence of review and/or use of any such recording by federal prosecutors or agents.  As the Deputy Attorney General's letter notes, "It is important to the Department of Justice that we identify any defendant who was harmed by an unwarranted invasion of attorney-client privilege, and that we ensure an appropriate remedy."

---

[7] The computer was loaded with software permitting viewing of video evidence from the Leavenworth detention facility.  The video evidence itself was on separate external hard drives and was not erased.  It is unproven whether any relevant data or metadata, such as logging information, was erased when the computer's internal hard drive was upgraded.

Thus, there is no need to reconvene the evidentiary hearing to ensure that others have an opportunity to investigate and litigate Sixth Amendment claims.

**3. If the Court Determines that the Evidentiary Hearing Should Reconvene, the Government Respectfully Requests that it Be Focused on Determining Whether There Have Been Violations of the Sixth Amendment as to Defendants With Standing.**

It appears that the FPD's prediction that "it could complete the evidentiary portion of the hearing in less than two full days," Docket #536 at p.2, may be overly optimistic unless the Court imposes limits on the scope of the evidence.   On the first day of the hearing on May 15, 2018, the examination of just three witnesses, one of whose testimony was very brief (Leslie West), took almost a full day.  A fourth witness (Erin Tomasic) had just begun to answer the Special Master's questions when the Court adjourned at the end of the day.  If the hearing reconvenes, it is the government's understanding that the FPD may be calling numerous additional witnesses, including perhaps as many as approximately a dozen DOJ employees who are under subpoena.  It also appears that the FPD may be using as many as a hundred or more exhibits when questioning these witnesses.  The Special Master has identified additional exhibits that he may use to examine some or all of these witnesses.[8]  Further, the completion of former SAUSA Tomasic's testimony, which had only just begun, is likely to last at least several hours.

Much of the inquiry at the May hearing was about collateral matters related to defendants in other cases in which judgment has now been entered.  Strikingly, there was *no* inquiry as to whether any government official watched or listened to recordings of any of the *Black* defendants or any of the Rule 41(g) movants.  Although it might be the FPD's theory that evidence of USAO missteps as to other inmates shows a pattern of conduct, without *some* evidence of *some*

---

[8] As the Court is aware, there are *Touhy*-related issues in connection with some of the testimony sought.  *See* Docket #466.

constitutional violation as to a litigant actually before the Court, *modus operandi* evidence, even if it exists, is not relevant.

Accordingly, if the evidentiary hearing reconvenes, the government respectfully requests that the Court limit examination of witnesses to evidence directly relevant to whether any of the parties in the case before the Court suffered prejudice from violations of their Sixth Amendment rights by USAO employees being involved in the review and use of audio or video recordings of privileged attorney-client telephone calls and/or meetings.[9]  If, but only if such evidence is adduced, it may be appropriate to permit some inquiry as to whether similar conduct occurred with respect to other inmates in other cases.  Such a tiered approach may help streamline the proceedings.

4.      **Conclusion**

For the reasons stated above, the government respectfully requests that the Court deny the motion to reconvene the evidentiary hearing or, in the alternative, limit the scope of the hearing as described above.

> Respectfully submitted,
>
> Steven D. Clymer
> Assistant United States Attorney
> Special Attorney for the United States

---

[9] The Deputy Attorney General's letter makes clear that "[t]he Department is open to working with [the Special Master] as a mediator to further identify, refine, and possibly resolve issues in the litigation."

**Certificate of Service**

I hereby certify that on the 1st day of August, 2018, the foregoing was electronically filed with the clerk of the court for the District of Kansas using the CM/ECF system, which will send a notice of electronic filing to all counsel.

<u>*S/Deanna Lieberman*</u>
Deanna Lieberman
Paralegal Specialist
United States Attorney's Office
Northern District of New York